Larry B. MOORE, Petitioner,

v.

Lee Ann CHRONES, Warden,
Respondent.

No. CV 03–9543–PSG (MAN).

United States District Court,
C.D. California.

Jan. 14, 2010.

Larry B. Moore, Delano, CA, pro se.

Susan S. Kim, CAAG–Office of Attorney General of California, Los Angeles, CA, for Respondent.

ORDER ADOPTING FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE

PHILIP S. GUTIERREZ, District Judge.

Pursuant to 28 U.S.C. § 636, the Court has reviewed the First Amended Petition and related documents filed by Petitioner, all of the records herein, the Report and Recommendation of United States Magistrate Judge ("Report"), and the following documents filed by Petitioner on December 10, 2009: Objections to the Report and related Request to "Take Judicial" Notice of Lodging of Memorandum of Points and Authorities (collectively, the "Objections"); Motion Asking the Benefit of Liberal Construction; Application for Leave to Exceed the 25 Page Limitment [*sic* ] ... [1]; Notice of Hearing on Motion for Summary Judgment by Petitioner, Motion for Summary Judgment by Petitioner, and Affidavit of Petitioner Larry B. Moore in Support of Motion for Summary Judgment (collectively, the "Summary Judgment Motion"); and Notice to "Take Judicial" Notice of Lodging of Documents in Support of Petitioner's Objection to United States Magistrate Judge[']s Report and Recommendation[ ] and to His Motion for Summary Judgment ("Notice"). The Court has conducted a *de novo* review of those matters to which objections to the Report have been made.

The Court has reviewed the Summary Judgment Motion and related Notice. By the Summary Judgment Motion, Petitioner seeks summary judgment on several claims alleged in the First Amended Petition, as well as with respect to a host of additional claims that are not alleged in the First Amended Petition. The Summary Judgment Motion does not comply with Local Rule 56–1 and, thus, is procedurally improper. Moreover, Petitioner's attempt to raise numerous, and apparently unexhausted new claims, long after briefing has been completed, and through a summary judgment motion rather than through a 28 U.S.C. § 2254 habeas petition, is improper.

A district court has discretion, but is not required, to consider evidence or claims presented for the first time in Objections to a Magistrate Judge's Report and Recommendation. *See Brown v. Roe,* 279 F.3d 742, 744–45 (9th Cir.2002); *United States v. Howell,* 231 F.3d 615, 621–22 (9th Cir.2000). To the extent the Summary Judgment Motion raises additional claims that are not alleged in the First Amended Petition, the Court exercises its discretion to decline to consider Petitioner's belatedly-raised claims. However, to the extent the Summary Judgment Motion raises arguments pertinent to the habeas claims alleged in the First Amended Petition and considered in the Report, the Court deems such arguments to constitute objections to the Report and has considered such arguments in conjunction with its consideration of Petitioner's Objections to the Report. Accordingly, the Summary

1. As Petitioner's various submissions in response to the Report were filed on December 10, 2009, this Application is deemed GRANTED.

Judgment Motion is deemed to be DENIED as to both the claims alleged in the First Amended Petition and the newly-raised claims.

Having completed its review of the filings and records in this case, the Court accepts and adopts the Report and the findings of fact, conclusions of law, and recommendations therein. Accordingly, IT IS ORDERED that: (1) the First Amended Petition is DENIED; and (2) Judgment shall be entered dismissing this action with prejudice.

IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment herein on the parties.

LET JUDGMENT BE ENTERED ACCORDINGLY.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

MARGARET A. NAGLE, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable Philip S. Gutierrez, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order No. 05–07 of the United States District Court for the Central District of California.

### INTRODUCTION

Petitioner, a California state prisoner, filed a habeas petition, pursuant to 28

U.S.C. § 2254, on December 30, 2003. On January 7, 2004, the Court dismissed the petition with leave to amend, because it failed to allege any grounds for relief. Petitioner thereafter filed a First Amended Petition ("Petition"), which set forth 30 claims. During the course of this action, Petitioner also filed four volumes of exhibits entitled "Notice to Take 'Judicial' Notice of Lodging of Documents" (hereafter, "Pet. Lodg.").

Respondent moved to dismiss the Petition on the grounds that one claim was not cognizable and several other claims were unexhausted ("MTD"); Respondent also lodged pertinent portions of the state record ("Lodg."). On February 24, 2005, the United States District Judge to whom this case formerly was assigned[1] granted the MTD, in part, and denied the MTD, in part, and amended the Petition by dismissing Grounds Twenty–Four, Twenty–Five, Twenty–Seven through Twenty–Nine, four unexhausted subclaims of Ground Fifteen,[2] and six unexhausted subclaims of Ground Twenty–Two.[3] (*See* Order of February 24, 2005, and underlying Report and Recommendation of October 25, 2004, at 15–16 and 18–19.)

Subsequently, Respondent filed a Return to the Petition and lodged additional portions of the state record ("Supp. Lodg."). Petitioner thereafter filed a two-volume Traverse.

---

1. On September 16, 2008, this case was transferred from former District Judge George P. Schiavelli to District Judge Gutierrez.

2. These four dismissed subclaims of Ground Fifteen are the allegations that the prosecution: "failed to disclose leniency to the victim"; "failed to play entire 911 tape, which would have impeach[ed] testimony of Officer Bright"; "did not prove they in due deligince [*sic*] had been in communication with the victim"; and "had pronunce [*sic*] ready, but failed to have any prosecution witnesses in

court [at] the start of trial, the day they pronounced ready."

3. These six dismissed subclaims of Ground Twenty–Two are the allegations that counsel provided ineffective assistance by failing to: (1) interview and subpoena alibi and exonerating witnesses; (2) hire a private investigator; (3) file a Section 1538.5 motion to suppress; (4) object to insufficient evidence; (5) research the applicable case law and procedures; and (6) "live up to the promises they made to Petitioner."

Briefing is complete, and the matter is submitted and ready for decision. For the reasons set forth below, the Court recommends that the Petition be denied on the merits and dismissed with prejudice.

## PRIOR PROCEEDINGS

On September 1, 2000, a Los Angeles Superior Court jury convicted Petitioner of one felony count of petty theft with a prior theft-related conviction (Cal.Penal Code § 666) and one felony count of possession of a controlled substance, *i.e.,* heroin (Cal. Health & Safety Code § 11350(a)). (Supp. Lodg. No. 1, Clerk's Transcript ("CT") 156A–66.) In bifurcated proceedings, the trial court found "true" sentencing allegations that Petitioner had sustained two prior "strike" convictions within the meaning of California's Three Strikes Law (Cal.Penal Code §§ 667(b)-(i)) and 1170.12(a)-(d), and had served seven prior prison terms (Cal.Penal Code § 667.5). (CT 296–99; Supp. Lodg. No. 4, Reporter's Transcript ("2RT") 54–55, 71–74.) After reducing the "wobbler" petty theft count to a misdemeanor and striking the seven prior prison term one-year sentence enhancements, the trial court sentenced Petitioner for a total term of 25 years to life on the principal count of possession of heroin, concurrent to a six-month term for the petty theft count. (CT 300–02; 2RT 101–05.)

Petitioner appealed. (Lodg. Nos. 2–4.) The California Court of Appeal affirmed Petitioner's conviction and sentence by a reasoned opinion issued on September 12, 2002, 2002 WL 31029143. (Lodg. No. 5.) On November 20, 2002, the California Supreme Court summarily denied Petitioner's petition for review. (Lodg. Nos. 6–7.)

While his appeal was pending, Petitioner filed numerous requests for post-conviction relief in the trial court and the California Court of Appeal, including motions to vacate judgment, for resentencing, and to stay his sentence, as well as petitions for writs of habeas corpus, qua warranta, prohibition, and mandate. All were denied. (Lodg. Nos. 8–13, 15–25.) He also filed three habeas petitions in the California Supreme Court during the pendency of his appeal, and all were denied on procedural grounds. (*See* Lodg. Nos. 28–33.)

Following the conclusion of his appeal, Petitioner filed two further habeas petitions in the California Supreme Court. Both petitions were denied on a procedural ground. (Lodg. Nos. 34–38; Supp. Lodg. Nos. 6–8.)

## SUMMARY OF THE EVIDENCE AT TRIAL

The Court has reviewed the record in this case, as well as the California Court of Appeal's summary of the evidence in its opinion on direct appeal. The state court's summary is consistent with the Court's own review of the record. Thus, the Court has quoted it below to provide an initial factual overview, and additional relevant portions of the trial record will be discussed as needed in connection with the Court's analysis of Petitioner's claims.[4]

---

**4.** In affirming the judgment against Petitioner, the California Court of Appeal discussed and summarized the evidence presented at trial in a section entitled "Facts." (Lodg. No. 5 at 3–4.) On federal habeas review, "a determination of a factual issue made by a State court shall be presumed to be correct" unless rebutted by the petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). *See also Schriro v. Landrigan,* 550 U.S. 465,

473–74, 127 S.Ct. 1933, 1939–40, 167 L.Ed.2d 836 (2007) ("AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.' ") (citing Section 2254(e)(1)); *Pollard v. Galaza,* 290 F.3d 1030, 1033, 1035 (9th Cir.2002) (statutory presumption of correctness applies to findings by both trial courts and appellate courts); *Dubria v.*

Ronnie Chong is a general contractor. He collects scrap brass from his jobs and saves it in a box in his backyard for future recycling. He keeps a pair of old gloves on top of the box for handling the brass. At 11:20 a.m. on February 26, 1999, Chong heard someone in his backyard. When he came out of his house to investigate, he saw [Petitioner] pushing a shopping cart into his front yard; all of Chong's brass was in [Petitioner's] shopping cart. [Petitioner] also had the gloves. Chong confronted [Petitioner], asking, "Where are you going with my stuff?" [Petitioner] replied, "This is mine," and kept moving. Chong grabbed the shopping cart with both hands to prevent [Petitioner] from taking the brass. [Petitioner] took a brass faucet spout from the shopping cart and swung it at Chong's wrist, barely missing him. Chong released the shopping cart, but kicked it over, spilling some of the brass onto the ground. [Petitioner] righted the shopping cart, which still contained some of Chong's brass, and ran away. Chong gave chase. [Petitioner] threw some pieces of brass at Chong as he ran; they did not hit Chong. [Petitioner] eventually escaped by jumping over a gate. [Petitioner] was forced to abandon the shopping cart, and Chong recovered his brass

from it. However, [Petitioner] retained the gloves.

Three days later, [Petitioner] crossed the street in front of Chong's car. Chong recognized [Petitioner] and telephoned the police. [Petitioner] was pushing another shopping cart containing brass. Chong recognized his gloves in the shopping cart.

Police arrested [Petitioner]. Before he was advised of the charges, [Petitioner] spontaneously told police, "I wasn't in nobody's backyard." [Petitioner] was searched. In the pocket of a jacket found in the shopping cart, police discovered eight balloons holding .66 grams of a substance containing heroin, as well as a small bindle holding .15 grams of a substance containing heroin.

The sole defense witness was [Petitioner's] mother, who testified that she gave [Petitioner] the gloves found in his possession. In argument to the jury, [Petitioner's] attorney asserted [Petitioner] was in the business of collecting useful items from other people's trash, and [Petitioner] may have found the jacket unaware of the heroin hidden in the pocket.

(Lodg. No. 5 at 3–4.)

**PETITIONER'S HABEAS CLAIMS**

*Ground One:* Trial counsel provided ineffective assistance by failing to move to sever the theft and drug counts, in violation of the Sixth Amendment.[5] (Petition

---

*Smith*, 224 F.3d 995, 1000 (9th Cir.2000) (en banc).

The Section 2254(e)(1) presumption has not been shown to be inapplicable to the state appellate court's description of the evidence presented at Petitioner's trial. Accordingly, in the above summary, the Court has quoted the pertinent portions of the state court's decision. *See Moses v. Payne*, 555 F.3d 742, 746 n. 1 (9th Cir.2009) (relying on and presuming the correctness of the state appellate court's summary of the evidence at trial, when such findings had not been shown to be erroneous under Section 2254(e) (1)); *Raley v. Ylst*, 470 F.3d 792, 796 (9th Cir.2006).

**5.** In most of his claims, Petitioner alludes to specific rights established by the United States Constitution and various Amendments contained in the Bill of Rights (such as the Fourth, Fifth, Sixth, and Eighth Amendments). However, he also has included unexplicated references to the Fourteenth Amendment, presumably on the theory that the underlying federal constitutional rights on which his habeas claims rest have been extended to state criminal defendants by the Fourteenth Amendment. Petitioner does not indicate any intent to assert habeas claims under the Fourteenth Amendment separate and distinct from his claims under the

at 5.)

*Ground Two:* The trial court erred by instructing the jury pursuant to California Jury Instruction, Criminal ("CALJIC") No. 17.41.1, because the instruction "nullified" juror deliberations, in violation of Petitioner's rights to due process and a fair trial, as well as unspecified "rights" of the jurors. (Petition at 5.)

*Ground Three:* The trial court erred by failing to exercise its discretion to strike one of Petitioner's two prior "strike" convictions, in violation of the Fourth Amendment. (Petition at 6.)

*Ground Four:* Petitioner's Three Strikes sentence constitutes cruel and unusual punishment, in violation of the Eighth Amendment. (Petition at 6.)

*Ground Five:* Petitioner's trial counsel was ineffective for advising Petitioner to admit the prior conviction allegations, in violation of the Sixth Amendment. (Attachment to Petition ("Petition Att.") at 4.)

*Ground Six:* The prosecutor was estopped from alleging that Petitioner's prior convictions were "strikes" under the Three Strikes Law, because by doing so, the prosecutor relitigated the validity of those prior convictions. (Petition Att. at 4–5.)

*Ground Seven:* As shown by newly discovered evidence, Petitioner was denied a fair trial, because the prosecutor suppressed certain evidence (including police reports, logs, and similar documents), in violation of the Fourth, Fifth, and Sixth Amendments. (Petition Att. at 5.)

*Ground Eight:* Because, at the probable cause hearing conducted within 48 hours of Petitioner's arrest, a "neutral magistrate" found that probable cause did not exist to support detaining Petitioner on Counts 2 and 3 (petty theft with a prior theft conviction, and possession of heroin for sale), the

prosecutor's amendment of those counts and their assertion against Petitioner at trial violated due process and the Fourth Amendment. (Petition Att. at 5.)

*Ground Nine:* Petitioner was entitled to be sentenced pursuant to the prosecution's first plea offer—notwithstanding Petitioner's rejection of all plea offers made and his decision to proceed to both a court and then a jury trial on the charges against him—and the failure to sentence him pursuant to the terms of that initial plea offer violated the Fourth and Sixth Amendments. (Petition Att. at 5.)

*Ground Ten:* There was insufficient evidence to support the trial court's "true" finding with respect to the prior convictions allegations, in violation of the Fifth and Eighth Amendments. (Petition Att. at 5–6.)

*Ground Eleven:* California's Three Strikes Law is unconstitutional, because the law is set forth in two separate statutes, one derived from enactment by the state legislature and one derived from enactment by a later voter initiative, in violation of the Fourteenth Amendment. (Petition Att. at 6.)

*Ground Twelve:* California's Three Strikes Law violates the Ex Post Facto Clause. (Petition Att. at 6.)

*Ground Thirteen:* Petitioner could not be sentenced pursuant to the Three Strikes Law, because he was serving an unconstitutional parole term at the time he was arrested for the instant offenses. Thus, his prior conviction could not serve as a "strike." (Petition Att. at 6–7; *see also* Traverse at 80–83.)

*Ground Fourteen:* Petitioner is not procedurally barred from directly challenging

---

Fourth, Fifth, Sixth, and Eighth Amendments. Accordingly, in analyzing Petitioner's claims, the Court has referenced, and will

discuss, only the particular constitutional rights in issue under the cited Amendments set forth in the Bill of Rights.

the legality of his prior "strike" convictions. (Petition Att. at 7.)

*Ground Fifteen:* The prosecutor committed misconduct, in violation of the Fourth, Fifth, and Sixth Amendment, by: (1) amending Counts 2 and 3 (the petty theft with a prior theft conviction and possession of heroin for sale counts) in the Information and Amended Information despite the "neutral magistrate's" determination that probable cause did not support detaining Petitioner for further proceedings on those counts (as set forth in present Ground Eight); (2) suppressing discovery of complete and/or additional police reports; (3) failing to provide timely discovery of the tape of a 911 call; (4) amending the prior conviction allegations to add a second "strike" conviction, in retaliation for Petitioner's refusal of a plea offer; and (5) falsifying a document regarding the transcript of the 911 call to imply to the jury that it was an "official document." (Petition Att. at 7–8.)

*Ground Sixteen:* The arbitrary and inconsistent manner in which the Three Strikes Law is applied violates due process. (Petition Att. at 8.)

*Ground Seventeen:* The prosecution failed to allege properly the statutory provisions underlying the Three Strikes Law in the Amended Information, therefore precluding application of the Three Strikes Law to Petitioner. His sentence, thus, violates the Fourth, Fifth, Sixth, and Eighth Amendments. (Petition Att. at 8.)

*Ground Eighteen:* Because Petitioner's 1995 prior "strike" conviction was itself a "void" judgment, the trial court could not utilize it to impose a Three Strikes sentence. (Petition Att. at 8.) In addition, at the sentencing hearing, the trial court erred when imposing sentence on the principal count (Count 3) by referring to the statute for the originally-charged offense of possession for sale of which Petitioner was acquitted (Cal. Health & Safety Code § 11351), instead of the lesser included offense of possession of which the jury found him guilty (Cal. Health & Safety Code § 11350(a)). (*Id.*)

*Ground Nineteen:* Petitioner's custodian, the California Department of Corrections and Rehabilitation ("CDCR"), has failed to accord to Petitioner "credits of 50%" in connection with his Three Strikes sentence, in conflict with the term of custody credits actually prescribed by the trial court's sentencing order and/or state law requirements governing the CDCR's calculation of goodtime/worktime credits and in violation of the Fourth and Sixth Amendments. (Petition Att. at 9; *see also* Traverse at 103–06.)

*Ground Twenty:* Petitioner's appellate counsel provided ineffective assistance in several respects, in violation of the Sixth Amendment. (Petition Att. at 9.)

*Ground Twenty–One:* Petitioner's trial judge acted in excess of his jurisdiction by ruling on a number of Petitioner's post-conviction applications for relief, and engaged in an unauthorized ex parte communication with the California Court of Appeal. (Petition Att. at 9.)

*Ground Twenty–Two:* Petitioner's trial counsel provided ineffective assistance by failing to obtain all discovery, prepare more, and adequately research caselaw and procedure, in violation of the Fourth and Sixth Amendments. (Petition Att. at 10.)

*Ground Twenty–Three:* Petitioner had a Fourteenth Amendment right to be sentenced to a probationary term and drug treatment, as called for by state law set forth in "Proposition 36," rather than pursuant to the Three Strikes Law. (Petition Att. at 10.)

*Ground Twenty–Six:* In violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the prosecu-

tion suppressed discovery of the gloves found in Petitioner's possession at the time of his arrest, which the victim had identified as his own, as well as police photographs of those gloves and "contraband." (Petition Att. at 11.)

*Ground Thirty:* The trial judge violated the Fourth, Fifth, and Sixth Amendments when he: (1) "impeached" the jury's verdict by imposing a six-month (and concurrent) term on the petty theft with a prior count; (2) acted vindictively in sentencing Petitioner due to Petitioner's rejection of a plea offer; and (3) improperly sentenced Petitioner based on his Count 3 conviction, because the charged crime had not been presented to the jury. (Petition Att. at 12; *see also* Traverse at 126–28.)

## STANDARD OF REVIEW

The Petition is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under Section 2254(d), a federal court may not grant a writ of habeas corpus on behalf of a person in state custody "with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). *Grounds One Through Four:*

 Petitioner raised Grounds One through Four on direct appeal, and the California Court of Appeal denied them, on their respective merits, in a written, reasoned decision. (Lodg. No. 5.) When the claims were then raised in a petition for review, the California Supreme Court denied relief summarily. (Lodg. No. 7.) The state high court's "silent" denial is considered to be "on the merits." *See Hunter v. Aispuro,* 982 F.2d 344, 347–48 (9th Cir. 1992). In addition, that "silent" denial is deemed to rest on the last reasoned decision on this claim, namely, the grounds articulated by the California Court of Appeal in its decision on the merits. *See Ylst v. Nunnemaker,* 501 U.S. 797, 803–06, 111 S.Ct. 2590, 2594–96, 115 L.Ed.2d 706 (1991); *see also, e.g., Delgadillo v. Woodford,* 527 F.3d 919, 925 (9th Cir.2008); *Medley v. Runnels,* 506 F.3d 857, 862 (9th Cir.2007) (*en banc* ), *cert. denied,* —— U.S. ——, 128 S.Ct. 1878, 170 L.Ed.2d 754 (2008). Accordingly, to the extent that Grounds One through Four present cognizable claims (as discussed further below), they are governed by the Section 2254(d) standard of review, specifically, Section 2254(d)(1).[6] *See Lambert v. Blodgett,* 393 F.3d 943, 966–69 (9th Cir.2004) (Section 2254(d) applies when the state court has denied a claim based on its substance, rather than on the basis of a procedural or other rule precluding state court review of the merits).

 "Clearly established Federal law," for purposes of Section 2254(d)(1) review, "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); *see also Carey v. Musladin,* 549 U.S. 70, 74, 127 S.Ct. 649, 653, 166 L.Ed.2d 482 (2006); *Lockyer v. Andrade,* 538 U.S. 63, 71, 123 S.Ct. 1166, 1172, 155 L.Ed.2d 144 (2003); *Stokes v. Schriro,* 465 F.3d 397, 401–02 (9th Cir. 2006) (this statutory language "refers to Supreme Court precedent at the time of

---

**6.** Petitioner has not expressly raised any Section 2254(d)(2) challenge to the state courts' rejection of his claims, and none is apparent from the record.

the last-reasoned state court decision"). Section 2254(d)(1) "plainly restricts the source of clearly established law to the Supreme Court's jurisprudence." *Lambert,* 393 F.3d at 974; *see also Plumlee v. Masto,* 512 F.3d 1204, 1210 (9th Cir.2008) (*en banc* ) ("What matters are the holdings of the Supreme Court, not the holdings of lower federal courts."), *cert. denied,* —— U.S. ——, 128 S.Ct. 2885, 171 L.Ed.2d 822 (2008). However, although "[o]nly Supreme Court precedents are binding on state courts under AEDPA," Ninth Circuit "precedents may be pertinent to the extent that they illuminate the meaning and application of Supreme Court precedents." *Campbell v. Rice,* 408 F.3d 1166, 1170 (9th Cir.2005) (*en banc* ); *see also Mendez v. Knowles,* 556 F.3d 757, 767 (9th Cir.2009).

■ Under the first prong of Section 2254(d)(1), a state court decision is "contrary to" federal law if the state court applies a rule that contradicts the governing law as stated by the Supreme Court or reaches a different conclusion than that reached by the high court on materially indistinguishable facts. *Price v. Vincent,* 538 U.S. 634, 640, 123 S.Ct. 1848, 1853, 155 L.Ed.2d 877 (2003). This includes "use of the wrong legal rule or framework." *Frantz v. Hazey,* 533 F.3d 724, 734 (9th Cir.2008) (*en banc* ).

■ The second prong of Section 2254(d)(1) is met when a state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies it to the facts of the petitioner's case. *Williams,* 529 U.S. at 412–13, 120 S.Ct. at 1523. The "unreasonable application" inquiry is an objective one, and the standard is not satisfied simply by showing error or incorrect application of the governing federal law. *Andrade,* 538 U.S. at 75, 123 S.Ct. at 1174; *Woodford v. Visciotti,* 537 U.S. 19, 25, 123 S.Ct. 357, 360, 154 L.Ed.2d 279 (2002) (*per curiam* ); *Williams,* 529 U.S. at 409, 120

S.Ct. at 1521. "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473, 127 S.Ct. 1933, 1939, 167 L.Ed.2d 836 (2007).

■ "[I]n the absence of a Supreme Court decision that 'squarely addresses the issue' in the case before the state court ..., or establishes a general principle that 'clearly extends' to the case," it cannot be said that clearly established federal law exists for purposes of Section 2254(d), and a federal court must defer to the state court decision. *Moses,* 555 F.3d at 760 (*citing Wright v. Van Patten,* 552 U.S. 120, 128 S.Ct. 743, 746, 169 L.Ed.2d 583 (2008) (*per curiam* ); *Musladin,* 549 U.S. at 76, 127 S.Ct. at 654; and *Panetti v. Quarterman,* 551 U.S. 930, 127 S.Ct. 2842, 2858, 168 L.Ed.2d 662 (2007)); *see also Knowles v. Mirzayance,* —— U.S. ——, 129 S.Ct. 1411, 1419, 173 L.Ed.2d 251 (2009) (noting that under ample Supreme Court precedent, it is not an unreasonable application of clearly established federal law "for a state court to decline to apply a specific legal rule that has not been squarely established by" the Supreme Court); *Holley v. Yarborough,* 568 F.3d 1091, 1097–98 (9th Cir.2009) ("[c]ircuit precedent may not serve to create established federal law on an issue the Supreme Court has not yet addressed," and "[w]hen there is no clearly established federal law on an issue, a state court cannot be said to have unreasonably applied the law as to that issue"). If, however, the Supreme Court's decisions "do provide a 'controlling legal standard' ... that is applicable to the claims raised by a habeas petitioner without 'tailoring or modification' of the standard ..., the question is then whether the application of that standard was objectively unreasonable,

even if the facts of the case at issue are not identical to the Supreme Court precedent." *Moses*, 555 F.3d at 754 (citations omitted).

Accordingly, the Court will look to the California Court of Appeal's decision on direct appeal as a starting point in its analysis of Grounds One through Four. *Grounds Five Through Twenty–Three, Twenty–Six, And Thirty:*

The AEDPA's deferential standard of review set forth in Section 2254(d) applies only to a "claim that was adjudicated on the merits in state court proceedings." Petitioner raised the claims alleged in Grounds Five through Twenty–Three, Twenty–Six, and Thirty in habeas petitions filed at various state court levels. When raised in habeas petitions filed with the California Supreme Court, the state high court denied relief, citing California cases that reflect procedural bases for the denial of the claims.[7] (*See* Lodg. Nos. 28–36.)

 The state high court's denial of these 21 claims was not a decision on the merits of these claims.[8] Accordingly, because Grounds Five through Twenty–Three, Twenty–Six, and Thirty were not denied on their merits, the Section 2254(d) standard of review does not apply to them.

---

7. Given the California Supreme Court's express citation to procedural bases for denial, "look through" review, to any earlier orders by the lower courts on the same or similar allegations, does not apply. *See, e.g., Ylst*, 501 U.S. at 803–04, 111 S.Ct. at 2594–95.

8. Respondent argues very broadly that Grounds Five through Twenty, Twenty–Two, and Twenty–Six are procedurally barred, in view of the California Supreme Court's denial of collateral relief "with a citation to *In re Clark*, 5 Cal.4th 750, 21 Cal.Rptr.2d 509, 855 P.2d 729 (1993) (*see* Lodged Doc. No. 36), which deals with the bar of untimeliness." (Return at 13–14.) Respondent's brief and conclusory arguments are unpersuasive, even if Petitioner has failed to satisfy his interim burden on the adequacy issue. The Court cannot say that Respondent has met, or is likely to meet, her ultimate burden of showing that the procedural bar on which she relies is adequate (*see Bennett v. Mueller*, 322 F.3d 573, 585–86 (9th Cir.2003)), as there is no evidence before the Court establishing the adequacy of the *Clark* bar. Earlier this year, the Ninth Circuit declined to apply the procedural default doctrine based on a 2–1 California Supreme Court order citing *Clark*, finding that no standards exist in non-capital cases for determining what constitutes "substantial delay," which is the predicate for application of the *Clark* bar. *Townsend v. Knowles*, 562 F.3d 1200, 1206–08 (9th Cir.2009) (holding that the State had not met its burden of establishing that California's untimeliness rule is adequate), *cert. denied*, —— U.S. ——, 130 S.Ct. 193, 175 L.Ed.2d 121 (2009); *see also Bennett*, 322 F.3d at 583 (finding the *Clark* untimeliness bar inadequate on the record before it); *Bennett v. Mueller*, 364 F.Supp.2d 1160, 1169–75 & n. 15 (C.D.Cal. 2005) (finding that the petitioner met his interim burden of establishing the inadequacy of the *Clark* bar). As a result, The Court declines to hold that the procedural default doctrine bars this Court's consideration of these 21 claims.

Respondent also asserts that, given the additional procedural grounds cited by the California Supreme Court in denying Ground Twenty–Three, that claim is unexhausted. (*See* Return at 48–50 (citations omitted); *see also* Lodg. Nos. 30–31.) As discussed infra in connection with Ground Twenty–Three, although Petitioner alludes to the Fourteenth Amendment, the purported factual basis for his assertion of a federal constitutional violation is non-existent. At most, Ground Twenty–Three asserts a claim of state law error, and the exhaustion requirement of Section 2254 does not apply to such a non-cognizable claim. *See, e.g., Gutierrez v. Griggs*, 695 F.2d 1195, 1197–98 (9th Cir.1983) (citing *Engle v. Isaac*, 456 U.S. 107, 120 n. 19, 102 S.Ct. 1558, 1567 n. 19 [71 L.Ed.2d 783] (1982), for the proposition that, if a state prisoner alleges no deprivation of a federal right, it is unnecessary for the federal habeas court to determine whether he preserved the claim before state courts by exhausting it, because the claim may be summarily dismissed). Thus, Respondent's exhaustion arguments regarding Ground Twenty–Three do not bar this Court's review and denial of the claim.

*See Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir.2003); *Pirtle v. Morgan*, 313 F.3d 1160, 1167–68 (9th Cir.2002). When "there is no state court decision on [the merits of the constitutional violation alleged] to which to accord deference," "we must review it de novo." *Id.* at 1167; *see also Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir.2004); *Nulph*, 333 F.3d at 1057.[9]

## DISCUSSION

I. *Petitioner's Ineffective Assistance of Trial and Appellate Counsel Claims Do Not Warrant Federal Habeas Relief.*

 Grounds One, Five, Twenty, and Twenty–Two (as amended) rest on allegations that both Petitioner's trial and appellate counsel provided ineffective assistance.[10] (Petition at 5 and Petition Attachment at 4, 9–10.) The Sixth Amendment guarantees the effective assistance of counsel, both at trial and on appeal. *See Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984); *see also Smith v. Robbins*, 528 U.S. 259, 285–86, 120 S.Ct. 746, 764–65, 145 L.Ed.2d 756 (2000). To establish ineffective assistance by his trial counsel, Peti-

tioner must demonstrate both that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 688–93, 104 S.Ct. at 2064–68; *see also Mirzayance*, 129 S.Ct. at 1420 ("*Strickland* requires a defendant to establish deficient performance and prejudice"); *Yarborough v. Gentry*, 540 U.S. 1, 5, 124 S.Ct. 1, 4, 157 L.Ed.2d 1 (2003) (*per curiam*) (the Sixth Amendment right "is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense"). As both prongs of the *Strickland* test must be satisfied to establish a constitutional violation, failure to satisfy either prong requires that an ineffective assistance claim be denied. *See Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069 (no need to address deficiency of performance if prejudice is examined first and found lacking); *Rios v. Rocha*, 299 F.3d 796, 805 (9th Cir.2002) ("[f]ailure to satisfy either prong of the *Strickland* test obviates the need to consider the other"); *Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir.1998) (no need to address prejudice when petitioner cannot establish deficient performance).

9. The Court notes that, to the extent the allegations of Grounds Five through Twenty–Three, Twenty–Six, and Thirty may present potentially cognizable claims for relief in this Court if liberally and broadly construed, some of the factual and legal allegations contained in these claims may not have been clearly and fairly presented to the California Supreme Court and, thus, arguably *may* implicate exhaustion concerns. However, given the posture of this case—including Respondent's failure to raise such an argument, and the fact that the bulk of Petitioner's allegations have been presented to the California Supreme Court—and because it is "perfectly clear" that these claims are without merit for the reasons discussed below, the Court may review such allegations even if there is an exhaustion concern and, moreover, may do so pursuant to the above-noted de novo standard of review. *See, e.g.,* 28 U.S.C. § 2254(b)(2)

("[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"); *Rhines v. Weber*, 544 U.S. 269, 277, 125 S.Ct. 1528, 1535, 161 L.Ed.2d 440 (2005) (discussing application of Section 2254(b)(2)); *Cassett v. Stewart*, 406 F.3d 614, 623–24 (9th Cir.2005) (it is appropriate to deny an unexhausted claim on the merits under Section 2254(b)(2) "when it is perfectly clear that the applicant does not raise even a colorable federal claim").

10. The Court addresses Petitioner's claims out of the order in which he presented them in the Petition for the purpose of grouping related claims when possible, and when resolution of a "later" pleaded claim may bear on the resolution of an "earlier" pleaded claim.

The first prong of the *Strickland* test—deficient performance—requires a showing that, in the light of all the circumstances, counsel's performance was "outside the wide range of professionally competent assistance." *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066. Judicial scrutiny of counsel's performance "must be highly deferential," and this Court must guard against the distorting effects of hindsight and evaluate the challenged conduct from counsel's perspective at the time in issue. *Id.* at 689, 104 S.Ct. at 2065; *see also Mirzayance,* 129 S.Ct. at 1420 (" 'The proper measure of attorney performance remains simply reasonableness under prevailing professional norms' "; *quoting Strickland* ); *Gentry,* 540 U.S. at 8, 124 S.Ct. at 6 (noting that even inadvertent, as opposed to tactical, attorney omissions do not automatically guarantee habeas relief, because "[t]he Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight"); *Wiggins v. Smith,* 539 U.S. 510, 523, 123 S.Ct. 2527, 2536, 156 L.Ed.2d 471 (2003) (the first *Strickland* prong is a "context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time' "). A habeas reviewing court can " 'neither second-guess counsel's decisions, nor apply the fabled twenty-twenty vision of hindsight' ... but rather, will defer to counsel's sound trial strategy." *Murtishaw v. Woodford,* 255 F.3d 926, 939 (9th Cir.2001) (*citing Strickland* ).

Due to the difficulties inherent in making this evaluation, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. A habeas petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (*internal quotation and citation omitted* ); *see also Matylinsky v. Budge,* 577 F.3d 1083, 1091

(9th Cir.2009) (the petitioner "bears the burden of proving that [counsel's] trial strategy was deficient"); *Murtishaw,* 255 F.3d at 939 (the petitioner "bears the heavy burden of proving that counsel's assistance was neither reasonable nor the result of sound trial strategy").

The second prong of the *Strickland* test—prejudice—requires a showing of a "reasonable probability that, but for counsel's unprofessional errors, the result of the [trial] would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id.; see also Visciotti,* 537 U.S. at 22, 123 S.Ct. at 359.

■ With respect to Petitioner's claim that appellate counsel provided ineffective assistance, the analytical framework of *Strickland* also governs. *Pollard v. White,* 119 F.3d 1430, 1435 (9th Cir.1997); *Miller v. Keeney,* 882 F.2d 1428, 1433 (9th Cir. 1989). As the Ninth Circuit has explained, the two *Strickland* prongs often will overlap in the appellate context:

> In many instances, appellate counsel will fail to raise an issue because she foresees little or no likelihood of success on that issue; indeed, the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy.... For these reasons, a lawyer who throws in every arguable point—"just in case"—is likely to serve her client less effectively than one who concentrates solely on the strong arguments. Appellate counsel will therefore frequently remain above an objective standard of competence (prong one) and have caused her client no prejudice (prong two) for the same reason—because she declined to raise a weak issue.

*Miller,* 882 F.2d at 1434.

■ In making the Sixth Amendment assessment in the context of an omitted claim on appeal, the Court must decide

whether the claim would have resulted in a "reasonable probability of reversal." *Miller*, 882 F.2d at 1434; *see also Wildman v. Johnson*, 261 F.3d 832, 840–42 (9th Cir. 2001) (appellate counsel's failure to raise issues on direct appeal does not constitute ineffective assistance when appeal would not have provided grounds for reversal); *Jones v. Smith*, 231 F.3d 1227, 1239 n. 8 (9th Cir.2000) (same).

### A. Trial Counsel

#### 1. Ground One: Failure To Seek Severance Of Theft–Related And Drug–Related Counts

The Amended Information in this case charged Petitioner with two theft-related counts (second degree robbery and petty theft with a prior theft-related conviction), both of which arose from events that took place on February 26, 1999, and one drug-related count (possession of heroin for sale), which stemmed from narcotics found on March 1, 1999, when Petitioner was taken into custody based on the theft offenses. (CT 13–17; *see also* Lodg. No. 5 at 3–4.) The jury found Petitioner: not guilty of the robbery count; guilty of the petty theft with a prior count; and, with respect to the drug count, not guilty of the charge of possession for sale of a controlled substance (heroin) but guilty of the lesser included offense of possession of heroin. (CT 156A–66.)

In Ground One, Petitioner contends that trial counsel should have moved to sever the drug count from the theft counts pursuant to California Penal Code § 954. Petitioner argues that severance was appropriate under Section 954, and a motion to sever would have been granted, because the drug and theft counts were not sufficiently factually and legally related to support joinder. Petitioner asserts that it is reasonably probable a different result would have occurred at trial had the counts been so severed, because, *inter*

*alia*: the evidence connected to each count was highly prejudicial to the other; it was prejudicial for the jury to learn that Petitioner had been charged with committing a theft crime only a few days before his drug arrest; and by its nature, the petty theft with a prior theft conviction charge necessarily required the jury to learn that Petitioner had suffered a prior theft conviction, a fact that could have been kept from a jury determining the drug count alone in a separate trial. (*See* Lodg. No. 2 at 15–20—Petitioner's arguments on state appeal.)

#### a. The State Court Decision

The California Court of Appeal rejected Petitioner's claim based on *Strickland* and state law, as well as the relevant state standards governing severance motions under California Penal Code § 954. (Lodg. No. 5 at 4–8.) At the start of its analysis, the state appellate court observed that Petitioner's "argument that a motion to sever would have been granted appears to be well taken," noting:

> Possession for sale of heroin is not a different statement of robbery or petty theft with a prior, nor is a drug offense of the same class as a theft offense. The possession offense occurred three days after the theft offenses, and the only connection between the two was discovery of the heroin at the time of [Petitioner's] arrest for robbery. This is insufficient to support joinder.

(*Id.* at 5–6).

The California Court of Appeal observed, however, that "the fact that a severance motion would have been granted does not establish ineffective assistance of counsel" (Lodg. No. 5 at 6), given the requirements that both *Strickland* prongs be established. With respect to the deficient performance prong, the state appellate court noted:

> Counsel's sole argument as to the unknowing possession of the heroin was

that [Petitioner] obtained the jacket by rooting through someone's trash and was unaware of the drugs in the jacket pocket. This argument depended upon the evidence relating to the theft offenses, that is, [the victim's] testimony that [Petitioner] took the brass from his backyard recyclable box. Without this testimony, counsel would have had no basis for suggesting [Petitioner's] possession of the heroin was unknowing. (*Id.* at 6–7.) The state appellate court acknowledged that Petitioner "could have testified, but not without his substantial criminal record being disclosed to the jury." (*Id.* at 7 n. 1.) "Therefore, there could have been a rational tactical purpose for counsel's decision to try the counts together." (*Id.* at 7.)

With respect to the prejudice prong, the California Court of Appeal concluded that Petitioner had "failed to meet his burden of showing that, but for counsel's failure to sever the counts, he would have received a more favorable result," finding that:

> [Petitioner] was acquitted on the two more serious counts of robbery and possession for sale of heroin, and convicted only of petty theft with a prior and possession of heroin. Had these counts been tried separately, it is not reasonably probable he would have obtained an even more favorable verdict. Considered independently, the evidence of petty theft was overwhelming. [The victim] positively identified [Petitioner] as the man who had taken his scrap brass, [Petitioner] was arrested with [the victim's] gloves in his possession, and [Petitioner's] volunteered statement to police that he was not in anyone's backyard reflected his consciousness of guilt. Had the jury not been aware that [Petitioner] possessed heroin at the time of his arrest, the evidence of petty theft would have remained just as overwhelming, and the result would have been the same. (*See People v. Breault* (1990) 223 Cal.App.3d 125, 134 [273 Cal.Rptr. 110] [charges of possession of drugs are not inherently inflammatory].) Similarly, the evidence of possession of heroin, considered separately, was likewise overwhelming. The heroin was indisputably discovered in the pocket of a jacket in [Petitioner's] sole possession. Had the jury not known of [Petitioner's] theft of [the victim's] brass, the evidence of [Petitioner's] possession of the heroin would have been just as strong. Indeed, in the absence of the evidence relating to [Petitioner's] collection of items from other people's trash, [Petitioner] would have lacked the basis for his argument that his possession of the heroin was unknowing. While it is true the jury would not have been aware of [Petitioner's] prior theft-related felony conviction had the counts been severed, the jury was instructed at great length not to consider that offense with respect to any charge other than petty theft with a prior. Such an admonition is sufficient to allay any prejudice which may have arisen from the fact of the prior conviction. (*People v. Garcia* (1986) 183 Cal. App.3d 335, 346–347 [228 Cal.Rptr. 87].) Indeed, the jury's verdict establishes the lack of any prejudice.

(Lodg. No. 5 at 7–8.)

The California Court of Appeal concluded that, because Petitioner had failed to establish either *Strickland* prong, he had not shown ineffective assistance of counsel in violation of the Sixth Amendment. (Lodg. No. 5 at 8.)

 b. *The State Court Decision Is Entitled To Deference.*

Under Section 2254(d)(1), which governs Ground One:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that

determination was unreasonable—a substantially higher threshold." ... And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. *See Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

*Mirzayance,* 129 S.Ct. at 1420 (citation omitted). In this case, "[u]nder the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard" (*id.*), Petitioner is not entitled to federal habeas relief, because the state court's finding that Petitioner was not prejudiced within the meaning of *Strickland* was not objectively unreasonable.[11]

In the first instance here, there was minimal risk of confusing the jury or causing the jury to consider the commission of either theft crime as evidence of Petitioner's guilt of the separate drug offense, given that the theft and drug crimes themselves were distinct and committed on different occasions. In addition, the jury was instructed: separately regarding each count and allegation; that each count constituted a distinct crime and required a separate verdict; and as the state appellate court noted, that evidence Petitioner had a prior theft conviction was admitted for a limited purpose only. (CT 106, 126–36, 139–40, 143.) Moreover, Petitioner's

defenses to each charge were consistent with and tended to support each other. As to both charges, his trial counsel argued that: Petitioner was in the business of collecting useful items from other people's trash; the manner in which the victim's recyclable metal was stored on the property (partially in a large trash can in the backyard of a multi-unit apartment building) reasonably indicated that the metal had been discarded and was available for Petitioner's collection, and thus, Petitioner was not guilty of theft; and because Petitioner was in the business of collecting discarded items, he found the jacket in issue and was unaware of the heroin hidden in its pocket. (*See, e.g.,* Supp. Lodg. No. 3, Reporter's Transcript ("1RT") 246–56.)

In addition, and as the state court observed, the fact that the jury acquitted Petitioner of the more serious robbery and possession of heroin for sale counts dispels any suggestion that joinder of the theft and drug counts "inflamed" or confused the jury, or otherwise prejudiced Petitioner. Significantly, Petitioner was convicted on lesser offenses as to *both* the theft and drug charges. "[T]he failure of the jury to convict on all counts is the best evidence of the jury's ability to compartmentalize the evidence." *Park v. California,* 202 F.3d 1146, 1150 (9th Cir.2000) (finding that, "because the jury did not convict on all counts it presumably was able to compartmentalize the evidence"; and further observing that to demonstrate prejudice based on the consolidation of counts at trial, a petitioner "must show that the jury was actually inflamed"). Significantly, in the initial court trial,[12] the trial court found Petition-

---

11. Because the prejudice finding is reasonable and, on its own, is sufficient to defeat Ground One, the Court need not, and does not, address the state court's finding on the deficient performance prong.

12. As addressed in more detail *infra,* Petitioner originally waived a jury trial and, following a court trial, was found guilty of all three charges. The trial court, however, set aside that verdict at Petitioner's request (CT 48),

er guilty on all counts, including the more serious robbery count. (Supp. Lodg. No. 2, Reporter's Transcript ("RT") 910–11.) By marked contrast, Petitioner's jury did not, an indication that the jury was not inflamed or confused by the consolidation of the charges.

In addition, as to the guilty verdicts reached on the lesser charges, the state appellate court determined that "overwhelming" evidence established Petitioner's guilt of the crimes of both petty theft with a prior and possession of heroin, a factual finding and determination of state law to which this Court defers. *See* 28 U.S.C. § 2254(e)(1); *Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S.Ct. 602, 604, 163 L.Ed.2d 407 (2005) (per curiam); *Hicks v. Feiock*, 485 U.S. 624, 630 & n. 3, 108 S.Ct. 1423, 1428 & n. 3, 99 L.Ed.2d 721 (1988);

*Wainwright v. Goode*, 464 U.S. 78, 84, 104 S.Ct. 378, 382, 78 L.Ed.2d 187 (1983). Against this "overwhelming" evidence, which established that Petitioner had committed each crime of which he was convicted, Petitioner does not establish that a different result would have obtained had the charges been considered in separate trials.

■■■■ Thus, even if the charges should have been severed under state law, as the California Court of Appeal found, it was reasonable for the state appellate court to conclude further that it was not reasonably probable that a different outcome would have ensued had counsel sought severance.[13] As a result, no Sixth Amendment violation has been shown, and the state court's rejection of Ground One was not objectively ·unreasonable. Accordingly,

and the case proceeded to the jury trial in issue in this case.

**13.** The Court notes that, in his Traverse (at 36–39), Petitioner apparently contends that his trial counsel (Brenda Vargas) must be found to have provided ineffective assistance, because in a reported decision involving a different defendant (Steven Vargas) issued in the same year that Petitioner was tried, an evidentiary hearing was ordered in connection with allegations that Ms. Vargas had provided ineffective assistance in Mr. Vargas's case. *See In re Vargas*, 83 Cal.App.4th 1125, 100 Cal.Rptr.2d 265 (2000). As Petitioner observes, and as his appellate counsel pointed out (Lodg. No. 2 at 19–20; Lodg. No. 24 at 11–18), the California Court of Appeal, in that decision, noted that Ms. Vargas had been accused of ineffective assistance in several other cases. *Id.* at 1134–36, 100 Cal.Rptr.2d at 271–73. Petitioner asserts that the existence of the *Vargas* decision subjected his trial counsel to a "conflict of interest," because it purportedly forced her to cooperate with the prosecutor in Petitioner's case to avoid being harmed in potential State Bar disciplinary proceedings, instead of fulfilling her asserted duty to maintain an adversarial relationship with the prosecutor to protect Petitioner's interests. (Traverse at 38–39.)

Apart from the question of whether Petitioner's belatedly-raised "conflict of interest" argument is exhausted, it plainly is frivolous.

Even if Ms. Vargas was undergoing State Bar disciplinary proceedings at the time of her representation of Petitioner, this fact did not create any conflict of interest with respect to representing Petitioner, much less any purported need for her to cozy up to the prosecutor in Petitioner's trial, who had nothing to do with any State Bar investigation. *See United States v. Nickerson*, 556 F.3d 1014, 1019 (9th Cir.2009) (violation by defendant's attorney of a state rule of professional conduct did not constitute per se ineffective assistance, nor did ethical violation create an actual conflict with defendant's interests by purportedly inhibiting counsel's performance). Moreover, the relevant inquiry on an ineffective assistance claim is whether counsel's performance was deficient and caused prejudice in connection with the particular defendant and trial in issue, not what occurred in other cases. *See, e.g., Bonin v. Calderon*, 59 F.3d 815, 838 (9th Cir.1995); *see also, e.g., Smith v. Ylst*, 826 F.2d 872, 876 (9th Cir.1987) (petitioner alleging that mental illness of counsel resulted in ineffective assistance was still required to "point to specific errors or omissions which prejudiced his defense"); *Frye v. Lee*, 235 F.3d 897, 906–07 (4th Cir.2000) (petitioner must point to "specific instances of defective performance caused by [counsel's] alcohol abuse"); *Berry v. King*, 765 F.2d 451, 454 (5th Cir.1985) ("[t]he critical inquiry is whether, for whatever reason, counsel's performance was deficient and whether that deficiency prejudiced the [petitioner]").

Ground One cannot warrant habeas relief. 28 U.S.C. § 2254(d)(1).

2. *Ground Five: Advising Petitioner To Admit A Prior Theft Conviction In Connection With Petty Theft With A Prior Count*

Petitioner contends that his trial counsel was ineffective for advising Petitioner to admit that he had suffered a prior theft conviction for the purpose of the pending Count 2/petty theft with a prior theft conviction charge. (Petition Att. at 4.) Petitioner asserts that each of the *seven* prior theft convictions alleged in the Amended Information for purposes of Count 2 was "untrue," notwithstanding the fact that, during trial, he admitted the truth of these prior conviction allegations. (*See* 1RT 7–12.) He contends that the trial court later found four of these prior conviction allegations to be "untrue," and the prosecutor later dismissed the seven prior conviction allegations. (Petition Att. at 4.)

The Amended Information alleged that, for purposes of Count 2 (petty theft with a prior), Petitioner had suffered seven prior theft-related convictions, which were listed as Case Nos. C35640, A586109, A765138, A095522, A371625, A960737, and A979309 (the "Count 2 Priors"). (CT 14.) The Amended Information also alleged that Petitioner had sustained two different prior convictions that constituted serious or violent felony "strikes," which were listed as Case Nos. BA104285 and BA127836 (the "Prior Strikes"). (CT 15.) In addition, the Amended Information alleged that Petitioner had sustained 11 prior convictions that resulted in the service of a prison term pursuant to California Penal Code § 667.5(b), which provides for sentence enhancement based on prior prison terms and the commission of additional crimes within five years of release; those 11 convictions consisted of the Count 2 Priors, one of the Prior Strikes, and three additional prior convictions. (*Id.*)

Before jury selection commenced, the trial court explained to Petitioner that, with respect to the Count 2 petty theft with a prior charge: the jury would hear evidence about the "the facts concerning the petty theft, and then they would hear about all the various prior convictions"; or alternatively, Petitioner could "shield the jury from hearing about each individual prior conviction involving theft by stipulating that it is a theft-related felony for the purpose of that count." (1RT 8–9.) After conferring with his counsel and receiving counsel's advice to enter into such a stipulation, Petitioner agreed to do so. (1RT 8–10.) Petitioner was then advised of his rights by the trial court, Petitioner waived those rights, and he then admitted the truth of the allegations regarding the Count 2 Priors "for the purpose of Count 2 only." (1RT 8–12.) The trial court expressly noted that none of the Count 2 Priors to which Petitioner admitted were alleged to be "strikes." (1RT 12.)

When the jury panel was called, the trial court generally described the allegations of the Amended Information to the prospective jurors and stated that, with respect to the Count 2 petty theft with a prior charge, "it's been stipulated and agreed that there is a prior theft-related conviction involved." (1RT 18–19.) After the close of the prosecution's case, in front of the jury, the parties stipulated that prior to the date of the charged petty theft, Petitioner had suffered a theft-related conviction at the felony level and for which he served a prison term. (1RT 156.) The trial court then instructed the jurors orally that: the stipulation did not constitute any admission of guilt as to the three counts charged; the jurors should not consider the stipulation as bearing on Petitioner's guilt; the stipulation was entered into by the parties simply as a matter of evidentiary convenience; and Petitioner was only "stipulating and agreeing that he suffered

this prior conviction." (1RT 156–58.) During the subsequent jury instruction, the trial court instructed the jurors with CALJIC No. 2.09, which reiterated the limited purpose of the stipulation, including that the jurors could not consider it as bearing on the issue of Petitioner's guilt or innocence of the charges before them. (CT 106; 1RT 193–94.)

■ At the outset, Petitioner's assertions about the supposedly "untrue" nature of the Count 2 Priors are unavailing. Even if his sworn admission of the truth of the Count 2 Priors could be overlooked, which is unlikely,[14] Petitioner has provided no reason to believe that the allegations would not have been found true had this element been submitted to the jury for its determination. Petitioner's assertion that the trial court found four of the Count 2 Priors "to be untrue" and the prosecution dismissed them as "untrue," which is notably lacking in citation to the record (Petition Att. at 4), is itself false, as the record reflects no such finding and dismissal. Petitioner may be relying on, but mischaracterizing, the bifurcated proceeding regarding the Section 667.5(b) sentence enhancement allegations, in which the trial judge found that the Section 667.5(b) allegations regarding 11 prior convictions supported a finding that Petitioner had sustained seven *separate* prior prison terms within the meaning of Section 667.5(b).[15] The trial court not only did not find any of the Count 2 Priors to be factually untrue, but also expressly noted the truth of many of the prior conviction allegations. (2RT 71–73; *see also* 2RT 57.) Significantly, in the prior court trial, the trial court determined that the evidence, including as to prior convictions, was sufficient to show that Petitioner was guilty beyond a reasonable doubt of petty theft with a prior conviction.[16]

■ Second, as the trial court took pains to advise Petitioner, the stipulation that Petitioner had sustained "a prior theft-related conviction" prevented the jury from hearing about the details of *each* of Petitioner's seven prior theft convictions, and the trial court both admonished and instructed the jury regarding the limited effect of the stipulation.[17] As the

14. A petitioner seeking to repudiate his statements made at a plea hearing faces a heavy burden. *Blackledge v. Allison,* 431 U.S. 63, 73–74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977).
 [T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. *Id.*

15. Some of the prior prison term allegations involved concurrent charges and concurrent commitments; hence, the trial court found that only seven, rather than 11, Section 667.5(b) enhancements were warranted. (*See, e.g.,* RT 314; 2RT 72.)

16. As discussed further below, Petitioner's conviction in the prior court trial was set aside on a procedural ground and not because of an asserted failure of proof or lack of sufficient evidence with respect to any of the charged offenses. (*See* 1RT 1–3.)

17. In the Traverse, Petitioner attempts to alter the nature of Ground Five, arguing that trial counsel's ineffectiveness was in failing to object to purported prosecutorial misconduct, *to wit,* the prosecutor's alleged opening argument statement to the jurors that Petitioner had suffered a prior theft conviction. Petitioner contends that the stipulation precluded any mention of the fact of the prior theft convictions whose truth he had admitted. (Traverse at 52–57.) Petitioner's belatedly-made assertions fail for three reasons.
 First, apart from a potential unexhaustion problem, it is improper to attempt to change the substance of a claim through a Traverse and to assert, as Petitioner has done, a new claim distinct from that alleged in the original

California Court of Appeal concluded in its review of whether Petitioner was prejudiced by a joint trial of the theft and drug counts, the jury's acquittal of Petitioner on the robbery and possession of heroin for sale, the court's limiting instruction, and the "overwhelming evidence" on the counts of which Petitioner was convicted, together, show that Petitioner did not suffer prejudice from the jury learning that he had suffered a prior theft conviction. Indeed, as the state appellate court noted, despite knowing that Petitioner had suffered a prior theft conviction, Petitioner's jury acquitted Petitioner of second degree robbery.

Petitioner has not established either deficient performance or prejudice in connection with Petitioner's stipulation to the truth of the Count 2 Priors allegations. Accordingly, no ineffective assistance of counsel has been shown, and Ground Five fails and must be denied.

petition. *See Cacoperdo v. Demosthenes,* 37 F.3d 504, 507 (9th Cir.1994) (claim raised for first time in traverse will not be considered); *Lewis v. Witek,* 927 F.Supp. 1288, 1291 n. 2 (C.D.Cal.1996) (same).

Second, the prosecutor, in her brief opening statement, did *not* discuss Petitioner's prior theft convictions or commit misconduct. (Supp. Lodg. No. 4, Augmented Reporter's Transcript ("ART") 7–10.) The prosecutor simply noted, without discussion, that, in addition to the robbery charge, Petitioner was "charged with petty theft with a prior conviction that arises from the same series of events, the theft of the metal." (ART 10.) Petitioner's apparent belief that the stipulation barred any reference to a necessary element of the charged crime, *i.e.*, the "with a prior" element of the Count 2 petty theft with a prior charge, is factually and legally meritless. The stipulation in this case simply inured to Petitioner's benefit by preventing the jury from hearing evidence of the number and details of Petitioner's many prior theft crimes; it did not remove a necessary element of the crime

### 3. *Ground Twenty–Two: Failure To Obtain "All" Discovery, Prepare More, And Adequately Research Caselaw And Procedure.*

Petitioner contends that trial counsel provided ineffective assistance by failing to obtain "all" discovery, prepare more, and adequately research caselaw and procedure. (Petition Att. at 10.) Although not so stated in the Petition, it appears that Petitioner contends that both the attorney who represented him at the initial court trial (Mark Bledstein) and his subsequent counsel retained to represent him at the jury trial in issue (Ms. Vargas) failed him in these respects. (*See* Traverse at 109–12.)

Petitioner's allegations are wholly conclusory and lacking in factual support. Indeed, Ground Twenty–Two of the Petition is bereft of a single factual allegation. The Traverse makes three vague factual references; however, they are inadequate to establish either deficient performance or prejudice.

from the jury. Any objection by trial counsel to the prosecutor's brief reference to the crime charged would have been futile and inappropriate. It is clear that the Sixth Amendment does not require attorneys to bring frivolous motions. *See, e.g., Rupe v. Wood,* 93 F.3d 1434, 1445 (9th Cir.1996) ("the failure to take futile action can never be deficient performance"); *James v. Borg,* 24 F.3d 20, 26–27 (9th Cir.1994) (counsel's failure to make what would be a futile motion does not qualify as ineffective assistance of counsel); *Lowry v. Lewis,* 21 F.3d 344, 346 (9th Cir.1994) ("[a] lawyer's zeal on behalf of his client does not require him to" take meritless action).

Third, and critically, prior to the prosecutor's opening statement, the trial judge already had advised the jurors that "it's been stipulated and agreed that there is a prior theft-related conviction involved." (1RT 18–19.) In short, the jury *already,* and appropriately, was aware of the fact that Petitioner had suffered a prior theft conviction.

■ The record shows that both defense counsel believed that "all" discovery had been provided. (*See* 1RT 4; RT A6.) The only "discovery" Petitioner identifies as allegedly omitted is the "newly discovered evidence" that is the subject of Ground Twenty–Six. As discussed *infra*, however, the Court has concluded that such "newly discovered evidence" was not material, and its omission from Petitioner's trial was of no effect. Hence, Petitioner cannot have suffered prejudice, within the meaning of *Strickland*, by reason of either or both of his attorney's alleged failure to obtain such items through the criminal discovery process.

Petitioner also fails to identify any further preparation or research that counsel should have conducted, other than to complain, as he does in other Grounds of the Petition, that the prosecutor acted wrongfully in amending the Information to include the petty theft with a prior and possession for sale counts. However, as discussed *infra*, that contention is without merit, and thus, neither deficient performance nor prejudice can be found based on the failure of either attorney to raise it, whether due to lack of preparation/research or any other reason. Although Petitioner further complains in his Traverse that his attorneys allegedly failed to interview and subpoena potential alibi and exonerating witnesses, that subclaim of Ground Twenty–Two was dismissed by the District Judge as unexhausted and, thus, cannot serve as a basis for relief. Given Petitioner's failure to identify any such alleged witnesses, his allegation would fail even if it actually were an extant claim in this case. *See, e.g., Alcala v. Woodford,* 334 F.3d 862, 872–73 & n. 3 (9th Cir.2003) (indicating that, in order to succeed on a claim of ineffective assistance of counsel based upon a failure to call witnesses, a habeas petitioner must not only identify the witnesses in question but also must describe specifically the testimony those witnesses would have given, as well as explain how that testimony might have altered the outcome of the trial).

Petitioner, in his twenty-second claim, simply does not identify any area of alleged deficient performance by either of his trial attorneys. Significantly, Petitioner does not address the critical question of why any purported failing by Mr. Bledstein (his attorney in the initial court trial) matters, given that the court trial verdict was set aside for reasons other than ineffective assistance of counsel, and Petitioner received a second trial by jury.[18] In any event, because Petitioner's allegations

---

18. After Petitioner was convicted in the court trial, the trial court commended Mr. Bledstein for having "done a remarkable job in keeping this from becoming a third strike case," despite the prosecutor's efforts to pursue a second "strike" allegation, and Petitioner expressly noted that he had "no dispute with [court trial counsel's] performance, with him presenting the case." (RT 911–12.) Subsequently, Ms. Vargas filed a motion to set aside the verdict and Petitioner's jury waiver, alleging that Mr. Bledstein had not adhered to Petitioner's desired trial strategy. (CT 42–46.) After advising Petitioner that setting aside the court trial verdict would enable the prosecutor to add the second "strike" allegation and thus potentially subject Petitioner to a Three Strikes sentence (a course of action that the prosecution confirmed it would take), the trial court set aside the court trial verdict as requested by Petitioner, but made no finding that Mr. Bledstein had been ineffective. (1RT 1–3.) Instead, the trial court stated:

The court has reconsidered this matter for quite some time. I am obviously an eyeball witness to what went on. The defendant was reluctant—it was probably buyer's remorse—in this case he was reluctant to go through with the court trial. In the interest of justice I suppose and with an over abundance of caution, I think I will set aside-because the defendant wants this, I will set aside the verdict in this case, . . . [and have] the plea of not guilty in place. (1RT 3.)

are too vague, conclusory, and lacking in factual support to establish ineffectiveness by either of his trial counsel, Ground Twenty–Two must be denied. *See, e.g., Dows v. Wood,* 211 F.3d 480, 486–87 (9th Cir.2000) (factually unfounded claim alleging ineffective assistance of counsel presents no basis for federal habeas relief); *Jones v. Gomez,* 66 F.3d 199, 204–05 (9th Cir.1995) (vague speculation or mere conclusions unsupported by record not sufficient to state claim; "conclusory suggestions that . . . trial and appellate counsel provided ineffective assistance fall far short of stating a valid claim of constitutional violation").

### B. *Appellate Counsel*

In Ground Twenty, Petitioner contends that his appellate counsel provided ineffective assistance. Although Petitioner asserts that he "presented many colorable issue to appeals counsel" that counsel failed to raise on direct review, Petitioner identifies only two such issues in the Petition. (Petition Att. at 9.) First, Petitioner asserts that his appellate counsel should have raised a claim that one of Petitioner's "strike" convictions (the 1995 conviction for residential burglary under California Penal Code § 459) was a "void" judgment. Second, Petitioner complains that his appellate counsel raised only one claim predicated on the asserted ineffective assistance of trial counsel (*i.e.,* the claim now alleged as Ground One), and he apparently contends that appellate counsel also should have raised the substance of Grounds Five and Twenty–Two on appeal.

 Petitioner's unexplicated assertion that there were "many colorable issues" Petitioner presented to appellate counsel that should have been raised on appeal is too vague and conclusory to warrant habeas relief.[19] *Jones v. Gomez,* 66 F.3d at 204–05.

 With respect to the assertion that appellate counsel should have raised a claim based on the "void" nature of Petitioner's 1995 "strike" conviction, as discussed *infra* in connection with Petitioner's Ground Eighteen attack on the validity of his 1995 "strike" conviction, Petitioner's arguments about why his 1995 conviction is "void" and purportedly could not serve as a "strike" are meritless. Neither deficient performance nor prejudice can be found when an appellate attorney fails to raise a claim on appeal that lacks merit. *See, e.g., Wildman,* 261 F.3d at 840–42; *Miller,* 882 F.2d at 1434.

With respect to Petitioner's claim that appellate counsel should have raised on appeal the ineffective assistance of trial counsel claims alleged in the instant Petition as Grounds Five and Twenty Two, the Court has found, as set forth above, that there was no ineffective assistance of trial counsel in connection with these claims. The Court can find no Sixth Amendment

---

**19.** In his Traverse (at 107), Petitioner alleges that appellate counsel also should have presented claims based on unspecified trial court errors, prosecutorial misconduct, and ineffective assistance of his trial counsel. Petitioner further asserts that appellate counsel was obligated to raise on appeal claims that Petitioner pursued independently through a pro se habeas petition filed while his appeal was pending, because the California Court of Appeal denied the petition and included within its order a statement that the issues alleged "may be raised on direct appeal if counsel determines that these issues have merit" (*see* Lodg. Nos. 20–21). (Traverse at 107–08.)

Petitioner's attempt to expand the scope of Ground Twenty through his Traverse is improper. *See Cacoperdo,* supra. Moreover, the new allegations set forth in the Traverse are unexhausted, because the state high court filing through which Petitioner exhausted Ground Twenty–Two did not include them. (*See* Lodg. No. 35 at 55–56.) Accordingly, Petitioner's belatedly-raised assertions cannot serve as a basis for habeas relief.

violation arising from appellate counsel's failure to raise these additional ineffective assistance of trial counsel claims, because it is plain that Petitioner has not established any constitutional error based on these claims, for the reasons discussed earlier.

Accordingly, Petitioner cannot establish that his appellate counsel's failure to raise the above-noted additional issues on appeal constituted deficient performance or that he suffered prejudice as a result of counsel's omissions. *See Morrison v. Estelle*, 981 F.2d 425, 429 (9th Cir.1992) (appellate counsel's failure to raise an issue on appeal does not constitute ineffective assistance if no constitutional violation has been shown, and thus, counsel had no reasonable likelihood of success in arguing the issue); *see also Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir.1985) (failure to raise meritless argument on appeal does not constitute

---

**20.** The version of CALJIC No. 17.41.1 given at Petitioner's trial provided:

> The integrity of a trial requires that jurors, at all times during their deliberations, conduct themselves as required by these instructions. Accordingly, should it occur that any juror refuses to deliberate or expresses an intention to disregard the law or to decide the case based on [penalty or punishment, or] any [other] improper basis, it is the obligation of the other jurors to immediately advise the Court of the situation.

(CT 148.)

**21.** Specifically, the California Court of Appeal stated:

> [Petitioner] contends the trial court improperly instructed the jury in the language of CALJIC No. 17.41.1, in violation of his constitutional right to a fair trial and due process. This contention has no merit. (*People v. Engelman* (2002) 28 Cal.4th 436, 121 Cal.Rptr.2d 862, 49 P.3d 209.) In any event, the use of CALJIC No. 17.41.1 was not prejudicial under any standard of reversible error. (*Chapman v. California*

ineffective assistance of counsel). Ground Twenty, therefore, must be denied.

## II. *Petitioner's Claim Of Instructional Error Does Not Warrant Federal Habeas Relief.*

In Ground Two, Petitioner contends that the trial court erred by instructing the jury with CALJIC No. 17.41.1,[20] because the instruction "nullified the jury," in violation of his rights to due process and a fair trial, as well as "jurors [*sic*] rights." (Petition at 5.) On direct review, the California Court of Appeal rejected Ground Two, finding both that the claim had "no merit," and any error in giving CALJIC No. 17.41.1 "was not prejudicial under any standard of reversible error."[21] (Lodg. No. 5 at 8 (citations omitted).) The California Supreme Court rejected the claim summarily. (Lodg. No. 7.)

▬▬▬ A claim of instructional error does not raise a cognizable federal claim

---

(1967) 386 U.S. 18, 22, 87 S.Ct. 824, 17 L.Ed.2d 705; *People v. Watson* (1956) 46 Cal.2d 818, 836, 299 P.2d 243.) There was no evidence of deadlock, holdout jurors, or reports of juror misconduct. (*See People v. Molina* (2000) 82 Cal.App.4th 1329, 1335–1336, 98 Cal.Rptr.2d 869.)

(Lodg. No. 5 at 8.)

In *Engelman*, which issued two years after Petitioner's trial, the California Supreme Court held that CALJIC No. 17.41.1 did not violate or infringe upon the state or federal constitutional rights to a trial by jury or the state constitutional right to a unanimous verdict. *See Engelman*, 28 Cal.4th at 439–40, 442–44, 121 Cal.Rptr.2d 862, 49 P.3d 209. Exercising its supervisory authority, the California Supreme Court nevertheless directed that use of the instruction be discontinued based on a concern that the instruction "has the potential to intrude unnecessarily on the deliberative process and affect it adversely—both with respect to the freedom of jurors to express their differing views during deliberations, and the proper receptivity they should accord the views of their fellow jurors." *Id.* at 440–41, 449, 121 Cal.Rptr.2d 862, 49 P.3d 209.

unless the error "so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 71–72, 112 S.Ct. 475, 481–82, 116 L.Ed.2d 385 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736–37, 52 L.Ed.2d 203 (1977); *Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). In determining whether a constitutional violation has occurred, the claimed instructional error must be viewed in the light of all the instructions given and the trial record, taken as a whole. *See Estelle*, 502 U.S. at 72, 112 S.Ct. at 482; *Cupp*, 414 U.S. at 146–47, 94 S.Ct. at 400.[22]

In *Brewer v. Hall*, 378 F.3d 952 (9th Cir.2004), the Ninth Circuit held that a habeas claim raising essentially the same contentions made by Petitioner in this case did not warrant relief under the standard of review set forth in 28 U.S.C. § 2254(d)(1). As the Ninth Circuit found, "no Supreme Court case establishes that an instruction such as CALJIC No. 17.41.1 violates an existing constitutional right." *Id.* at 956. The Ninth Circuit concluded, moreover, that existing Supreme Court precedent compels the rejection of a claim based on CALJIC No. 17.41.1, given the Supreme Court's statements that: the right to a representative jury does not include the right to be tried by jurors who have indicated an inability to follow the law and the instructions given them (*citing Lockett v. Ohio*, 438 U.S. 586, 596–97, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978)); jurors are bound to follow the law as stated by the trial court (*citing Sparf v. United States*, 156 U.S. 51, 72–73, 15 S.Ct. 273, 39 L.Ed. 343 (1895)); and there is no constitutional violation in removing jurors who are unwilling or unable to follow the trial court's instructions (*citing Morgan v. Illi-*

*nois*, 504 U.S. 719, 730, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992)). *Id.* The Ninth Circuit noted further that "[t]he California Supreme Court's decision [in *Engelman* ] to eliminate CALJIC 17.41.1 from the California courts' repertoire—as wise as that decision may have been—does not make it a clearly established unconstitutional instruction." *Id.* at 957.

As in *Brewer*, Petitioner has failed to cite any Supreme Court authority clearly establishing that the trial court's use of CALJIC No. 17.41.1 amounted to federal constitutional error, and the clearly established precedent compels the opposite conclusion. Even construed favorably to Petitioner, his claim that the trial court erred in providing CALJIC No. 17.41.1 rests on an unsettled legal proposition, and as a result, Section 2254(d)(1) precludes federal habeas relief. *See, e.g., Mirzayance*, 129 S.Ct. at 1419; *Van Patten*, 128 S.Ct. at 746; *Musladin*, 549 U.S. at 76, 127 S.Ct. at 654; *Holley*, 568 F.3d at 1097–98; *Moses*, 555 F.3d at 760. Accordingly, Ground Two must be denied.

III. *Petitioner's Claim Of Charging Error Does Not Warrant Federal Habeas Relief.*

In Ground Eight, Petitioner alleges that he was initially charged in a felony complaint with three counts—second degree robbery (Count 1), petty theft with a prior theft conviction (Count 2), and possession of heroin for sale (Count 3) (*see* Pet. Lodg., Vol. 3, Ex. Q–17)—but that at a probable cause hearing conducted within 48 hours of Petitioner's arrest, a "neutral magistrate" found that probable cause did not exist to support detaining Petitioner for further proceedings on Counts 2 and 3. Petitioner contends that, as a result of that initial probable cause determination, the prosecu-

---

**22.** Petitioner's belated assertion (Traverse at 42) that the use of CALJIC No. 17.41.1 constitutes structural error that cannot be reviewed under the harmless error test is unsupported and incorrect.

tor was forever barred from pursuing Counts 2 and 3 and, thus, acted improperly in filing an Information and Amended Information containing those two counts. Petitioner further contends that the assertion of Counts 2 and 3 against him violated the Fourth Amendment and due process. (Petition Att. at 5.)

■■■ Petitioner was arrested on March 1, 1999. The record does not contain any documentation from Petitioner's state criminal proceedings prior to April 20, 1999. Thus, Petitioner's assertion that, on March 3, 1999, a magistrate dismissed Counts 2 and 3 lacks record support. However, for purposes of argument, the Court will assume that this alleged event occurred. Petitioner, however, does not cite any state law establishing that such a dismissal would forever bar the re-allegation of these counts in a subsequent information under which a defendant is later arraigned [23] and does not establish any error of federal constitutional dimension.

■■■ Contrary to Petitioner's assertions, even if the magistrate dismissed Counts 2 and 3 at a probable cause hearing shortly after Petitioner's arrest, California law plainly allowed the prosecutor to reinstate those two charges.

It has long been the rule in [California] that a magistrate's dismissal of criminal charges following a preliminary examination does not bar the People from either refiling the same charges before another magistrate or seeking an indictment based upon those charges.... [T]he magistrate lacks the power to make a finding regarding the guilt or innocence of the accused, for the magistrate's authority is limited to determining whether sufficient or probable cause exists to hold the defendant for trial. Accordingly, as the magistrate has no power to make a determination on the merits of the case before him, there is no room for the application of the doctrines of res judicata or collateral estoppel.

 ....

It is, of course, the rule in [California] that the magistrate's order dismissing a felony complaint is not a bar to another prosecution for the same offense, either by filing a subsequent complaint ... or by seeking a grand jury indictment. Even a dismissal in the superior court following an order setting aside an information or indictment is no bar to a future prosecution for the same offense....

 ... [California] cases have upheld subsequent prosecutions following dismissals ordered for such reasons as insufficiency of the evidence ..., lack of probable cause to commit ..., delay in prosecution ..., failure to exclude unauthorized persons from the courtroom ..., and furtherance of justice....

*People v. Uhlemann,* 9 Cal.3d 662, 664, 665–66, 108 Cal.Rptr. 657, 658–59, 511 P.2d 609 (1973) (citations omitted); *see also People v. Wallace,* 33 Cal.4th 738, 749, 16 Cal.Rptr.3d 96, 103, 93 P.3d 1037 (2004) ("[w]hen a magistrate declines to hold a defendant to answer on the ground that the evidence at the preliminary hearing did not establish probable cause to believe the defendant committed the charged offense, the ruling does not bar future prosecution"; and "[t]he prosecution may file another complaint charging the same offense or may file an information charging the same offense in the trial court"); Cal.Penal Code §§ 871, 871.5, 1009. A "dismissal at a preliminary hearing has no preclusive effect under California law," "an

---

**23.** Petitioner's invocation of California Penal Code § 654 (Traverse at 68) is unavailing. An initial probable cause determination does not constitute an "acquittal or conviction" within the meaning of Section 654(a).

initial dismissal for lack of probable cause is never a binding determination on the lack of probable cause," and a dismissed action can be re-filed. *De Anda v. City of Long Beach*, 7 F.3d 1418, 1422 & n. 6 (9th Cir.1993).

■ Because the proceeding before a magistrate to determine sufficient cause "is not a trial, ... if the magistrate forms a personal opinion regarding the guilt or innocence of the accused, that opinion is of no legal significance whatever in view of the limited nature of the proceedings." *Uhlemann*, 9 Cal.3d at 667, 108 Cal.Rptr. at 660, 511 P.2d 609. Even if the magistrate dismissed Counts 2 and 3 shortly after Petitioner's arrest, the prosecutor was entitled to re-file the charges in a new complaint. The record indicates that the prosecutor did so prior to the scheduled preliminary hearing.[24] (*See* CT 4.) At the scheduled preliminary hearing, Petitioner waived his right to a preliminary hearing, and he was ordered to appear for arraignment. (CT 1–6; *see also* Cal.Penal Code § 859b.) An Information alleging Counts 1, 2, and 3 was filed on May 4, 1999, and Petitioner pleaded not guilty. (CT 9–12, 18–19.)

Thus, even if Petitioner's factual allegations are accepted, he has not shown that any state law error occurred based on the prosecution's re-filing of Counts 2 and 3, and the prosecution of those counts in Petitioner's criminal proceeding. More critically, Petitioner has not shown any federal constitutional error arising from these events. Accordingly, Ground Eight presents no basis for federal habeas relief and must be denied.

## IV. *Petitioner's Sentencing Claims Do Not Warrant Federal Habeas Relief.*

By Grounds Three, Four, Six, Nine, Twelve through Fourteen, Sixteen through Nineteen, and Twenty–Three, Petitioner directs numerous challenges to the validity and duration of his sentence, and those challenges focus almost entirely on the Three Strikes aspect of his sentence. (*See* Petition at 6; Petition Att. at 4–10.)

### A. *The Trial Court's Failure To Strike A Prior "Strike" Conviction*

■ In Ground Three, Petitioner contends that the trial court erred by declining to exercise its discretion to strike one of Petitioner's two prior "strike" convictions.[25] Petitioner raised this same claim of state law sentencing error in his direct appeal in the state courts, which rejected the claim on its merits. (*See* Lodg. No. 2 at 30–43; Lodg. No. 5 at 8–12; Lodg. No. 6 at 9–11; Lodg. No. 7 at 1.) [26]

---

**24.** With leave of the trial court and without objection by Petitioner's counsel, the prosecutor amended the complaint to correct the reference in Count 3 to read "heroin" rather than "methamphetamine." (CT 4.) The prosecutor was entitled to make this amendment, pursuant to California Penal Code § 1009.

**25.** In California, a defendant who is convicted of a qualifying felony and has suffered at least two prior qualifying felony convictions may be sentenced to state prison for a term of 25 years to life under the provisions of the Three Strikes Law. *See generally People v. Superior Court (Romero)*, 13 Cal.4th 497, 53 Cal. Rptr.2d 789, 917 P.2d 628 (1996). However, a sentencing court has the discretion to strike

one or more of any prior "strike" conviction allegations found to be true. *Id.* at 531, 53 Cal.Rptr.2d at 809, 917 P.2d 628 In exercising its discretion, a sentencing court may look to the defendant's background, the nature of the current offense, and other "individualized considerations." *Id.*

**26.** In his Traverse (at 43–51), Petitioner purports to raise a host of additional, new claims, which, in significant part, seek to challenge the validity of Petitioner's two prior "strike" convictions. These numerous new claims do not appear to be exhausted, and as noted earlier, it is improper to change the substance of an exhausted claim set forth in a habeas petition through the assertion of an essentially

In the state courts, Petitioner argued that the trial judge declined to strike one of Petitioner's prior "strikes" based on the trial judge's incorrect conclusion that he did not have the discretion to do so. (Lodg. No. 2 at 30–43.) Petitioner relied on the trial judge's statement that, "although [the judge] has looked hard and carefully, [the judge] cannot, without abuse of discretion, strike either one of the strikes." (2RT 101.)

The California Court of Appeal rejected Petitioner's argument. (Lodg. No. 5 at 8–12.) The state appellate court engaged in a lengthy and detailed review of the sentencing proceedings in this case and found that Petitioner's contention that the trial court misunderstood the scope of its discretion to be meritless, stating:

> The trial court's [cited] statement was clearly an exercise of discretion, an application of the law to the facts as they had been presented at the sentencing hearing. The trial court clearly understood the scope of its discretion, distinguishing precedent, and seeking further information on factors necessary for the proper scope of its discretion. The trial court effectively concluded that it could find no reasons to support the striking of a prior.
>
> "Our review of the trial judge's remarks reflects that he was aware of his limited discretion to strike strikes. The court did not neglect its own findings, as defendant asserts. Instead, after considering 'the nature and circumstances of the defendant's present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects,' the [trial] court could find no reason for concluding that defendant fell outside the spirit of the three strikes statute." (*People v. Zichwic* (2001) 94 Cal.App.4th 944, 960–961 [114 Cal.Rptr.2d 733].) We find no abuse of discretion in the trial court's refusal to strike one of defendant's prior serious felony convictions. (*Id.* at p. 961, 114 Cal.Rptr.2d 733.)

(*Id.* at 12)

Federal habeas relief is available only if a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see also Estelle,* 502 U.S. at 67–68, 112 S.Ct. at 480. A challenge to a state court's application of state sentencing laws does not create a federal question cognizable in federal habeas review. *See Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990); *see also Campbell v. Blodgett,* 997 F.2d 512, 522 (9th Cir.1992) ("[a]s the Supreme Court has stated time and again, federal habeas corpus relief does not lie for errors of state law"); *Miller v. Vasquez,* 868 F.2d 1116, 1118–19 (9th Cir.1989). "[A] state court's interpretation of its [sentencing] statute does not raise a federal question." *Sturm v. California Adult Authority,* 395 F.2d 446, 448 (9th Cir.1967). Petitioner's claim in Ground Three involves solely the interpretation and application of state sentencing law, and thus, it does not present a basis for federal habeas relief.[27] *See,*

---

new claim in a traverse. *Cacoperdo,* 37 F.3d at 507. To the extent that these Traverse allegations are encompassed within Petitioner's other pending habeas claims, they will be discussed *infra;* however, to the extent that these Traverse allegations belatedly raise new and unexhausted claims, they will not be addressed.

**27.** Petitioner's bare reference to the Fourth and Fourteenth Amendments at the tail end of Ground Eight does not transform Petitioner's state law claim into a viable federal claim. It goes without saying that the Fourth Amendment has nothing to do with a state defendant's rights at sentencing. Even if the unexplicated reference to the Fourteenth Amendment is liberally construed to constitute a reference to due process, merely placing such a label on an alleged state law sentencing violation is insufficient to state a cognizable federal constitutional claim. *See*

*e.g., Cacoperdo,* 37 F.3d at 506 (petitioner's claim that the state court erred in imposing consecutive sentences was not cognizable in federal habeas); *Hendricks v. Zenon,* 993 F.2d 664, 674 (9th Cir.1993) (defendant's claim that state court was required to merge his convictions was not cognizable); *Watts v. Bonneville,* 879 F.2d 685, 687 (9th Cir.1989) (petitioner's claim that the trial court violated state law provision in sentencing him was not cognizable).

 To state a cognizable federal habeas claim based on a claimed state sentencing error, a petitioner must show that an alleged state sentencing error was "so arbitrary or capricious as to constitute an independent due process" violation. *Richmond v. Lewis,* 506 U.S. 40, 50, 113 S.Ct. 528, 536, 121 L.Ed.2d 411 (1992). Here, however, no state law error has been shown, as Petitioner's sentence was within the limits "authorized by state law," and as the state courts found, the trial court committed no error in the exercise of its discretion by declining to strike any of Petitioner's priors. This Court must defer to the state courts' interpretation and application of California law concerning the propriety of Petitioner's sentence under California law. *See Wainwright,* 464 U.S. at 84, 104 S.Ct. at 382; *Missouri v. Hunter,* 459 U.S. 359, 368, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983). As the state courts resolved this state law issue against Petitioner, this federal court may not disrupt that ruling. *See Bradshaw,* 546 U.S. at 76,

126 S.Ct. at 604; *Hicks,* 485 U.S. at 630 & n. 3, 108 S.Ct. at 1428 & n. 3; *Mullaney v. Wilbur,* 421 U.S. 684, 691, 95 S.Ct. 1881, 1886, 44 L.Ed.2d 508 (1975) ("state courts are the ultimate expositors of state law").

Ground Three presents no viable basis for federal habeas relief and the state court's rejection of the claim is entitled to deference. Accordingly, the third claim must be denied.

### B. *Cruel And Unusual Punishment*

In Ground Four, Petitioner contends that his Three Strikes sentence constitutes cruel and unusual punishment under the Eighth Amendment. (Petition at 6.) Petitioner, sentenced as a recidivist under the provisions of California's Three Strikes Law, received a term of 25 years to life with the possibility of parole based on his principal felony commitment offense of possession of heroin and his two prior "strike" convictions for residential burglary and attempted residential burglary.[28] (CT 300–02; RT 101–05.)

On direct review, the California Court of Appeal rejected Petitioner's claim that his sentence violated the Eighth Amendment, citing, *inter alia, Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), and *Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980). (Lodg. No. 5 at 13–15 and notes 2–3.) The state appellate court found that, under then existing

---

*Langford v. Day,* 110 F.3d 1380, 1389 (9th Cir.1996) (finding that a habeas petitioner may not "transform a state-law issue into a federal one merely by asserting a violation of due process").

**28.** Petitioner was convicted of a second felony—the Count 3 petty theft with a prior theft conviction—and under the allegations of the Amended Information, he was eligible for a second Three Strikes sentence. (CT 13–17,

156A–66.) To avoid this result, at sentencing following conviction, the trial court reduced the "wobbler" offense of petty theft with a prior theft conviction (charged as a felony in the Amended Information, *see* CT 14) to a misdemeanor (*see* Cal.Penal Code §§ 17, 666), and imposed a six-month concurrent term. (CT 300–02; RT 101–05.) The trial court also struck the seven one-year prior prison term enhancements it had found to be "true." (*Id.*)

clearly established federal law, a finding that a sentence is not grossly disproportionate is sufficient to foreclose finding an Eighth Amendment violation. (*Id.* at 13 n. 2.) The state appellate court noted Petitioner's 20–year criminal history, which encompassed seven separate prison terms. (*Id.* at 14.) The California Court of Appeal then concluded that Petitioner's recidivist sentence was not grossly disproportionate, because: Petitioner "continued to reoffend"; and in the present case, he had been sentenced to life in prison "not for his current possession of heroin," but "because he is a serious career criminal who has demonstrated repeatedly that he has no intention of abiding by the laws of this State." (*Id.*)

 "The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle 'that' applies to noncapital sentences.'" *Ewing v. California,* 538 U.S. 11, 20, 123 S.Ct. 1179, 1185, 155 L.Ed.2d 108 (2003) (quoting *Harmelin,* 501 U.S. at 996–97, 111 S.Ct. at 2702 (Kennedy, J., concurring)); *see also Solem,* 463 U.S. at 290, 103 S.Ct. at 3009 (under the Eighth Amendment, a criminal sentence must be proportionate to the crime for which the defendant has been convicted). But "[t]he Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate to the crime.'" *Ewing,* 538 U.S. at 23,

123 S.Ct. at 1187 (citation omitted); *see also Andrade,* 538 U.S. at 72, 123 S.Ct. at 1173.

In the cases cited by the California Court of Appeal—*Solem, Harmelin,* and *Rummel*—the Supreme Court struggled to define the contours of the Eighth Amendment's prohibition against cruel and unusual punishment in the context of recidivist and non-recidivist proportionality challenges to non-capital sentences. *See Rummel,* 445 U.S. at 264 *et seq.,* 100 S.Ct. at 1134 *et seq.; Solem,* 463 U.S. at 279, 282, 284–303, 103 S.Ct. at 3004, 3006–17; *Harmelin,* 501 U.S. at 961, 111 S.Ct. at 2684. Together, the three cases reflected a significant degree of uncertainty as to whether, and to what extent, disproportionality might render a sentence in breach of the federal constitutional prohibition against cruel and unusual punishment.[29] That uncertainty alone would render it difficult, if not impossible, to find the Section 2254(d) (1) standard met here. *See Mirzayance,* 129 S.Ct. at 1419; *Musladin,* 549 U.S. at 76, 127 S.Ct. at 654. In any event, that uncertainty was addressed and substantially resolved by the Supreme Court's decisions in *Andrade* and *Ewing,* two concurrently-issued decisions that rejected Eighth Amendment disproportionality challenges to sentences imposed under California's Three Strikes law. *See Andrade,* 538 U.S. at 66–70, 123 S.Ct. at 1170–72; *Ewing,* 538 U.S. at 29–31, 123 S.Ct. at 1189–90. These 2003 decisions, in

---

**29.** *Compare Solem,* 463 U.S. at 279, 282, 284–303, 103 S.Ct. at 3004, 3006–17 (finding Eighth Amendment violation where, under a South Dakota recidivist statute, a trial court imposed a life sentence without the possibility of parole against a defendant who had six prior convictions for nonviolent felonies, and was convicted of uttering a $100 "no account" check) *with Harmelin,* 501 U.S. at 961, 111 S.Ct. at 2684 (upholding a life sentence without the possibility of parole imposed against a first-time offender convicted for possession of 672 grams of cocaine under a Michigan non-recidivist statute); *see also Rummel,* 445 U.S. at 264 *et seq.,* 100 S.Ct. at 1134 *et seq.* (upholding a sentence of 25 years to life with the possibility of parole under a Texas recidivist statute, where the defendant was convicted of obtaining $120.75 by false pretenses and had prior convictions (and had served prison terms) for fraudulent use of a credit card (for $80 worth of goods and services) and passing a forged check (for $28.36)).

particular *Andrade*, make it clear that the California Court of Appeal's adjudication of Petitioner's claim is entitled to deference.

*Andrade*, like this case, involved federal habeas review pursuant to Section 2254(d)(1). Andrade was convicted of two felony counts of petty theft with a prior theft conviction, based on the theft of videotapes having a total approximate value of $150. *See* 538 U.S. at 66–68, 123 S.Ct. at 1169–71. Under the Three Strikes Law, Andrade, who, like Petitioner, had a prior criminal history of theft, burglary, and drug convictions, was sentenced to state prison for an aggregate term of 50 years to life.[30] *See id.* Applying AEDPA standards, the Supreme Court held that the California courts' decision upholding this Three Strikes sentence against an Eighth Amendment challenge was neither contrary to nor an unreasonable application of clearly established Supreme Court law. *Id.* at 73–77, 123 S.Ct. at 1173–75.

The Supreme Court acknowledged that its prior decisions in this area had "not established a clear or consistent path for courts to follow." *Andrade*, 538 U.S. at 72, 123 S.Ct. at 1173. For purposes of review under Section 2254(d)(1), it is "clearly established" only that the Eighth Amendment contains a "gross disproportionality principle" that is "applicable to sentences for terms of years." *Id.* However, the "precise contours" of the "gross disproportionality principle" are unclear, and the principle applies only in the "exceedingly rare" and "extreme" case. *Id.* Because the California courts considering Andrade's sentence did not apply a rule contradicting this limited principle, and be-

cause the facts at issue were "not materially indistinguishable" from those at issue in *Rummel* and *Solem,* the Supreme Court concluded that the state court's adjudication of Andrade's Eighth Amendment claim was not contrary to clearly established Supreme Court law. *Id.* at 71–75, 123 S.Ct. at 1172–75. In addition, because the governing legal principle itself affords broad discretion to legislatures to fashion sentencing provisions within the imprecise contours of proportionality, the Supreme Court concluded that it was not objectively unreasonable for the state courts to apply the principle to uphold Andrade's sentence. *Id.* at 76–77, 123 S.Ct. at 1175.

The Supreme Court's decision in *Andrade* dictates the result here. Petitioner's disproportionality claim—that his Three Strikes sentence of 25 years to life is disproportionate to his conviction on the principal felony count of possession of heroin—is not materially different from that considered and rejected in *Andrade*. Andrade's Three Strikes sentence of 50 years to life (two consecutive Three Strikes sentences) following conviction for two felony counts of petty theft with a prior was found by the Supreme Court not to be disproportionate to the offense or cruel and unusual punishment in violation of the Eighth Amendment. It follows that Petitioner's sentence also is not constitutionally defective.

■ Indeed, as noted earlier, Petitioner was convicted of an additional felony count (petty theft with a prior theft conviction) and was eligible for an *additional* Three Strikes term, *i.e.,* for a term of 50 years to life. Unlike the state trial court in *Andrade*, which imposed two consecu-

---

**30.** The sentence reviewed in *Andrade* was comprised of two consecutive terms of 25 years to life. 538 U.S. at 66–68, 123 S.Ct. at 1169–71. The commitment offenses were two felony counts of petty theft with a prior conviction and the prior serious or violent felony

convictions were three counts of first degree residential burglary. *Id.* In addition, as the Supreme Court noted, Andrade had been "in and out of state and federal prison since 1982," *i.e.,* for at least 15 years prior to the underlying offenses of conviction. *Id.*

tive Three Strikes sentences for a total term of 50 years to life, the trial court exercised its discretion to reduce Petitioner's "wobbler" petty theft conviction to a misdemeanor to avoid sentencing Petitioner to a *second* Three Strikes sentence and, moreover, struck seven one-year prior prison term enhancements. Nor can Petitioner's extensive criminal history—which included the residential burglary and attempted residential burglary convictions supporting the "strike" allegations in this case, as well as convictions for additional burglary, drug, forgery, grand theft auto, possession of a loaded weapon, and other offenses (*see, e.g.,* CT 13–17, 221–88; RT 101–05; Probation Report, filed under seal, at 5–6)—be considered less significant than Andrade's record of prior theft, burglary, and drug-related convictions. *See Andrade,* 538 U.S. at 68–70, 123 S.Ct. at 1170–72.[31] When, as here, a defendant is sentenced under the provisions of recidi-

vism legislation, such as California's Three Strikes and other habitual offender laws, the Supreme Court has made clear that the Eighth Amendment's "gross disproportionality principle" calls for an evaluation which "place[s] on the scales not only [a defendant's] current felony, but also his . . . history of felony recidivism." *Ewing,* 538 U.S. at 27–30, 123 S.Ct. at 1188–90.

Given the deferential standards governing the review of this claim, the Court cannot conclude that the California Court of Appeal's adjudication and rejection of Petitioner's Eighth Amendment claim-considering both the same recidivist statute and Supreme Court decisions reviewed by the Supreme Court in *Andrade* and *Ewing,* and reaching the same conclusion that a finding of gross disproportionality was not warranted in view of the circumstances of this case—was contrary to or an unreasonable application of clearly established federal law.[32] *Accord Nunes v. Ramirez–*

---

**31.** *See also Taylor v. Lewis,* 460 F.3d 1093, 1098 (9th Cir.2006) (finding third strike sentence for possession of .036 grams of cocaine to be constitutional when the petitioner's prior record included robbery with a firearm and voluntary manslaughter); *Rios v. Garcia,* 390 F.3d 1082, 1084–86 (9th Cir.2004) (petitioner's 25 years to life sentence under California's Three Strikes Law for felony petty theft conviction "was not grossly disproportionate to his crime in light of his criminal history").

**32.** This conclusion is not altered by *Ramirez v. Castro,* 365 F.3d 755 (9th Cir.2004), a case on which Petitioner relies. In *Ramirez,* the Ninth Circuit found, in part, that a Three Strikes sentence of 25 years to life for a third offense of petty theft with a prior was an "extreme sentence" that was grossly disproportionate to his crime and not justified by the "nature and paucity" of Ramirez's total criminal history, which consisted of his current offense (a "nonviolent shoplift") and his prior "shoplifting" (*i.e.,* second degree robbery) convictions. *Id.* at 756–57, 767–68 and n. 8, 770, 773–75 (citations omitted). Due to its "unique, objective factual circumstances," the Ninth Circuit concluded that Ramirez's situation was "indeed the 'exceedingly rare'

case where the sentence imposed is grossly disproportionate to the crimes committed, in violation of the Eighth Amendment." *Id.* at 756–57, 775 (citations omitted).

By contrast here, Petitioner's total criminal history reflected a lengthy criminal record of serious felony convictions and other crimes, as well as seven prior prison terms, and does not implicate the same concerns expressed by the *Ramirez* court. Unlike the petitioner in *Ramirez* and like the petitioner in *Rios* (*see* 390 F.3d at 1086), Petitioner has served time in state prison and has a lengthy criminal history. Unlike the petitioner in *Ramirez* and like the petitioner in *Rios* (*see id.*), Petitioner struggled with the victim. Moreover, unlike the petitioner in *Ramirez,* Petitioner was on parole at the time he committed the underlying offenses and has not remained offense free for any significant period of time. The "unique, objective factual circumstances" of *Ramirez* simply are not present here. *See, e.g., Rios,* 390 F.3d at 1086 (distinguishing *Ramirez,* because, *inter alia,* "[a]s did the defendants in *Ewing* and *Lockyer,* [petitioner] has a lengthy criminal history . . . and has been incarcerated several times").

*Palmer,* 485 F.3d 432, 439 (9th Cir.), *cert. denied,* 552 U.S. 962, 128 S.Ct. 404, 169 L.Ed.2d 283 (2007) (noting that the petitioner's "career as a criminal has been longer, more prolific, and more violent, than the petitioner's in [*Andrade* ]"; the petitioner was charged "with one count of the same underlying offense as the petitioner in [*Andrade* ], petty theft with a prior conviction"; and the petitioner's 25 years to life sentence "was less harsh than the sentence of the petitioner in [*Andrade* ], who received two consecutive sentences of twenty-five years to life"; and concluding, "[i]n light of this comparison," "that the California Court of Appeal was not objectively unreasonable when it determined that [the petitioner's] sentence did not offend the Constitution") (citations omitted).

Petitioner's sentence undoubtedly is lengthy, but under the clearly established federal law, that sentence cannot be vacated by this federal habeas court pursuant to Section 2254. The state court's rejection of Petitioner's Eighth Amendment challenge to his sentence comports with Supreme Court precedent and, thus, is entitled to deference under Section 2254(d)(1). Accordingly, Ground Four must be denied.

### C. The Purportedly "Void" Nature Of The Prior "Strike" Convictions

Grounds Ten, Fourteen, and Eighteen rest on Petitioner's contention that neither of his prior "strike" convictions properly qualified as a "strike." In brief, Petitioner's contentions underlying these claims are that: his 1995 "strike" conviction is a "void" judgment, because the transcript of a post-plea sentencing hearing for that conviction contains what is either a typographical error or misstatement by the sentencing judge in connection with a reference to the statutory section number designating the crime of conviction; his

1996 "strike" conviction was "invalidate[d]" as a result of its purported "reliance" on the "void" 1995 prior "strike" conviction; and therefore, he was not eligible to receive any form of a Three Strikes/recidivist sentence.

By Ground Ten, Petitioner complains that the evidence of his 1995 prior conviction was insufficient to establish its status as a "strike," because the trial court failed to examine the transcript of Petitioner's 1995 plea hearing, which purportedly would have established that the 1995 "strike" conviction was "void." By Ground Fourteen, Petitioner contends that he is not procedurally barred from challenging the validity of his 1995 and 1996 prior convictions. By Ground Eighteen, Petitioner asserts that both his 1995 conviction and his present Count 3 sentence are "void," because in both instances, the trial judge misspoke at sentencing when noting the specific code section for the underlying offense. (Petition Att. at 5–8.) Each of these claims is without merit.

█ As a threshold matter, Petitioner's attempt to challenge the constitutional validity of his 1995 and 1996 "strike" convictions necessarily fails, because it is barred by *Lackawanna County District Attorney v. Coss,* 532 U.S. 394, 121 S.Ct. 1567, 149 L.Ed.2d 608 (2001). In *Lackawanna,* the Supreme Court held that "once a state conviction is no longer open to direct or collateral attack in its own right ... the conviction may be regarded as presumptively valid." 532 U.S. at 403, 121 S.Ct. at 1574. If such a conviction is later used to enhance a criminal sentence, the enhanced sentence cannot be challenged in federal habeas proceedings "on the ground that the prior conviction was unconstitutionally obtained." *Id.* at 404, 121 S.Ct. at 1574. The only explicit exception to the *Lackawanna* bar is for *"Gideon"* claims,[33] which

---

**33.** *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

require a total denial of the right to counsel. *See id.*[34] As the record shows that Petitioner elected to represent himself, in *pro per*, in connection with his 1995 prior conviction and was represented by counsel in connection with his 1996 conviction (*see* Lodg. No. 40, Exs. A, F, and G; Lodg. Nos. 42–43),[35] this exception to *Lackawanna* is inapplicable. Ground Fourteen, thus, necessarily fails, because it is barred.[36]

▇ With respect to Ground Eighteen, Petitioner's principal contention is that the 1995 "strike" conviction in Case No. BA104285 is "void," because although Petitioner was expressly convicted of a violation of California Penal Code § 459 pursuant to a guilty plea (*see* Lodg. No. 43), the sentencing transcript reflects that the trial judge referenced "Penal Code Section 449" when sentencing Petitioner (Petitioner's Lodg., Vol. 1, Ex. N at 12). Petitioner has cited no state law, much less any federal constitutional law,[37] indicating that a mis-statement or mis-transcription regarding a statutory reference at a sentencing hearing renders an otherwise valid conviction "void."

When Petitioner pleaded guilty in February 1995, he was expressly advised that he was pleading guilty to a violation of California Penal Code § 459, *i.e.*, to having committed residential burglary, and the trial judge found Petitioner guilty of a violation of "Penal Code Section 459 as alleged in Count 1 of the Information." (Lodg. No. 43, February 16, 1995 plea hearing transcript at 9, 10.) The abstract of judgment states that Petitioner was convicted of a violation of Penal Code Section 459, for first degree burglary, on February 16, 1995. (Lodg. No. 43, abstract of judgment.) Petitioner's contention that his 1995 conviction was "entered" pursuant to a "void statute"—namely, "Section 449" (Traverse at 95)—is factually incorrect. The reference to "Section 449" in the transcript of the March 13, 1995 sentencing

---

**34.** The Supreme Court also noted, but did not rule on, a possible second exception when the defendant, through no fault of his own, was unable to challenge a prior conviction because of the unavailability of channels for review. *Lackawanna*, 532 U.S. at 405, 121 S.Ct. at 1574–75. The Supreme Court has not subsequently held that this exception, in fact, exists. *See Johnson v. United States*, 544 U.S. 295, 303–04 and n. 4, 125 S.Ct. 1571, 1578 and n. 4, 161 L.Ed.2d 542 (2005) (noting that "only one exception" to the *Lackawanna* bar has been recognized (the *Gideon* exception) and declining to explore the possible "rare" second exception). In any event, even if this "rare" second exception may exist, there is no basis for finding it applicable here, given that, under California law, Petitioner could have sought state appellate and/or habeas review with respect to both earlier "strike" convictions. *See Alford v. Maddock*, 286 Fed.Appx. 378, 379 (9th Cir. 2008) (holding that when the petitioner was not precluded from seeking state review of his prior conviction while it was operative, and only sought to do so in federal court once the prior conviction was used to enhance a later

conviction, "[t]hat choice, while permissible under California law, precluded his ability to seek federal relief.").

**35.** In connection with the 1996 conviction, although Petitioner initially proceeded on a *pro per* basis, counsel had been appointed by the time Petitioner pleaded guilty. (*Id.*)

**36.** Petitioner's assertion that *Lackawanna* has been "displaced" (Traverse at 95) is simply wrong. The *Lackawanna* rule remains viable.

Petitioner's assertion that Respondent failed to address Ground Fourteen, and thus, relief on the claim is mandated (Traverse at 83) is equally wrong. Respondent did address this claim within her discussion of Ground Eighteen. (*See* Return at 44 n. 15.) Even if Respondent had not done so, however, Petitioner could obtain habeas relief on this claim only if it merited habeas relief, which it plainly does not.

**37.** Petitioner's continued reliance on the Fourth Amendment as a purported basis for attacking his sentence (Petition Att. at 8) remains unavailing.

hearing (whether typographical error or a misstatement by the sentencing judge) simply is irrelevant to the validity of Petitioner's February 16, 1995 conviction. For the same reason, Petitioner's attendant assertion in Ground Eighteen—that, because his 1995 conviction purportedly "is invalid due to imposing a void statute," his 1996 conviction also is "void" due to the 1996 trial court's reliance "on that invalid [1995] case," thereby "mak[ing] the judgment and sentence in the 1996 case also invalid" (Traverse at 99)—is equally baseless.

■ Petitioner's further argument in Ground Eighteen—that his present Count 3 sentence is void, because the sentencing judge erroneously referenced Section 11351 of the California Health & Safety Code, rather than Section 11350(a)—also fails. Petitioner was charged in Count 3 with the offense of possession of heroin for sale (Cal. Health & Safety Code § 11351); the jury acquitted him of that greater charge and found him guilty of the lesser included offense of possession of heroin (Cal. Health & Safety Code § 11350(a)). (CT 160–61, 165; 1RT 281.) At the subsequent sentencing hearing, although the trial court initially referenced "11351" when imposing sentence (2RT 102), the trial court subsequently corrected itself during the same hearing and noted that sentence was being imposed on Count 3 for the "lesser of the 11351" offense originally charged (2RT 104). The abstract of judgment correctly reflected that Petitioner's Count 3 sentence was imposed for a violation of California Health & Safety Code § 11350(a). (CT 315.) Thus, sentence actually was imposed pursuant to Section 11350(a) and *not* Section 11351. As is the case with his assertion regarding his pur-

portedly "void" 1995 conviction, Petitioner does not establish that under state law, much less under federal constitutional law, the state judge's initial reference to the wrong statutory provision would render Petitioner's present sentence, which is correctly reflected in the abstract of judgment, void. Petitioner's assertion that he "was never sentence[d]" for the crime of which he was found guilty by Count 3 (Petition Att. at 8) is patently frivolous. Ground Eighteen, thus, necessarily fails.

■ The same defects that render Ground Eighteen meritless also doom Ground Ten. By his tenth claim, Petitioner argues that the evidence to support the trial court's "true" findings regarding the 1995 and 1996 Prior Strikes was insufficient, because the trial court lacked a copy of the transcript for the February 1995 plea hearing. Petitioner apparently contends that: (1) had the trial court viewed this transcript, it would have concluded that Petitioner's 1995 conviction was "void," because of the mistaken reference to "Section 449" at the March 1995 sentencing hearing; and (2) the fact of his 1995 prior conviction could not be established without the plea hearing transcript.[38]

At the bifurcated court trial on the prior conviction allegations, Haesook Bang, a forensic print specialist for the Los Angeles Police Department, testified that she rolled Petitioner's fingerprints and compared them with the fingerprint cards for both the 1995 conviction (Case No. BA104285) and the 1996 conviction (Case No. BA127836). (2RT 42–46.) She was "100 percent confident" that Petitioner's fingerprints matched those of the person who

---

38. It is true that a copy of the February 1995 plea hearing transcript was not included in the prosecution's California Penal Code § 969b priors package and that Petitioner's counsel had asked for a copy of it. It does not appear that the trial court considered that plea hearing transcript in finding the prior conviction allegations to be true. (*See, e.g.,* CT 199, 221–88; 1RT 285–86; 2RT 1–105.)

sustained the 1995 and 1996 convictions. (2RT 46.) The prosecution also presented Petitioner's Section 969b packet (CT 221–88; 2RT 50–53), which contained evidence pertaining to Petitioner's prior convictions. In addition, Petitioner's counsel filed copies of the plea hearing transcript for the 1996 conviction and the sentencing hearing transcript for the 1995 conviction. (CT 186–96.) The trial court found all of this evidence sufficient to support a "true" finding as to the allegations regarding the 1995 and 1996 Prior Strikes.

The Supreme Court announced the federal standard for determining the sufficiency of the evidence to support a conviction in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under *Jackson*, "[a] petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789 (further observing that "*all of the evidence* is to be considered in the light most favorable to the prosecution") (emphasis in original); *see also Wright v. West*, 505 U.S. 277, 284, 112 S.Ct. 2482, 2485–86, 120 L.Ed.2d 225 (1992). "Put another way, the dispositive question under *Jackson* is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'" *Chein v. Shumsky*, 373 F.3d 978, 982–83 (9th Cir.2004) (*en banc*) (quoting *Jackson*). When the factual record supports conflicting inferences, the federal court must presume—even if it does not affirmatively appear on the record—that the trier of fact resolved any such conflicts in favor of the prosecution and must defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S.Ct. at 2793; *see also Wright*, 505 U.S. at 296, 112 S.Ct. at 2492–93 (reiterating this presumption and the deference owed). "*Jackson* cautions reviewing courts to consider the evidence 'in the light most favorable to the prosecution.'" *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir.2004) (quoting *Jackson*).

Petitioner has not identified any respect in which the evidence was insufficient to establish that, in fact, he sustained the 1995 and 1996 Prior Strikes. The record before the trial court was ample, under the *Jackson* standard, to prove beyond a reasonable doubt that Petitioner had sustained these two prior convictions. The Court has examined the transcript of the February 1995 plea hearing (*see* Lodg. No. 43), and there is *nothing* in that transcript that casts doubt on the factual finding that Petitioner did sustain the 1995 conviction in Case No. BA104285, much less anything that casts doubt on the validity of that conviction or Petitioner's subsequent 1996 conviction.[39] Petitioner's apparent conten-

---

39. Petitioner's assertion that the 1995 conviction is "void" rests on the sentencing judge's erroneous reference at the 1995 sentencing hearing to "Section 449." Petitioner does not clearly argue that the 1995 conviction is "void" for any other reason. To the extent he might contend that his February 1995 plea was not voluntary, knowing, and intelligent, and his 1995 conviction is "void" on that basis, the record of his plea hearing precludes any such contention. The February 16, 1995 plea hearing transcript reflects that Petitioner was expressly advised of his constitutional rights and repeatedly stated that he understood them and was waiving them. The state judge found the plea to be knowing, voluntary, and intelligent. Moreover, the prosecutor expressly told Petitioner that the 1995 conviction was for a "serious felony," and it "will later enhance any sentence you receive on other felonies." (Lodg. No. 43 at 4–9.) *See Blackledge v. Allison*, 431 U.S. 63, 73–74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977) ("the representations of the defendant, his lawyer, and the prosecutor at such a hearing,

tion that the transcript would have proved that he did not sustain a valid conviction for a violation of California Penal Code § 459 is meritless, for the reasons outlined above. Petitioner's belated contention (in his Traverse at 75)—that the February 1995 transcript would have established that the 1995 conviction was not a "serious" felony—is equally frivolous, given that, in connection with the 1995 conviction, the trial court judge found Petitioner guilty of "residential burglary, first degree, serious felony" (Lodg. No. 43, plea hearing transcript at 9), and a conviction for first degree burglary necessarily constitutes a "serious" felony for purposes of the Three Strike Law. *See* California Penal Code § 1192.7(c)(18).

Accordingly, for all the reasons set forth above, the Court should deny Grounds Ten, Fourteen, and Eighteen.

### D. *The Alleged Unconstitutionality Of The Three Strikes Law As A Result Of Being Set Forth In Two Separate Statutes*

In Ground Eleven, Petitioner contends that it is unconstitutional for California to sentence defendants pursuant to a "strike" law that is set forth in two separate statutes, namely, one derived from enactment by the state legislature (Cal.Penal Code § 667(b)-(i)) and one derived from enactment by a later voter initiative (Cal.Penal Code § 1170.12(a)-(d)). (Petition Att. at 6.) Petitioner's argument is garbled and unclear, but he appears to contend that: the two Three Strikes enactments conflict and cannot be reconciled with each other;

under California law, a later statutory enactment must repeal an earlier one; and if his prior "strike" convictions were valid, he could be sentenced only under the later initiative version of the Three Strikes Law. However, Petitioner does not identify any actual conflict between the two provisions, nor does he identify any different sentence he would have received had he been sentenced only under the later enactment. (Traverse at 77–79.)

■ Petitioner's argument that the subsequent voter initiative superseded the legislative enactment rests on statutory construction principles under California law and, at most, raises a question of state law. This state law question is not cognizable on federal habeas review. *See Estelle*, 502 U.S. at 67–68, 112 S.Ct. at 480. Moreover, the current state of California law negates Petitioner's contention, because the California Supreme Court has declined to decide whether the later "initiative statute superseded the legislative statute." *Romero*, 13 Cal.4th at 505 n. 2, 53 Cal.Rptr.2d at 792 n. 2, 917 P.2d 628; *see also People v. Acosta*, 29 Cal.4th 105, 121–22, 124 Cal.Rptr.2d 435, 448–49, 52 P.3d 624 (2002) (observing that, in California, "[a]ll presumptions are against a repeal by implication" and "[a]bsent an express declaration of legislative intent, we will find an implied repeal only when no rational basis exists to harmonize the two potentially conflicting statutes, and the statutes are irreconcilable, clearly repugnant, and so inconsistent that they cannot operate concurrently"; and finding that

as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity."); *see also Torrey v. Estelle*, 842 F.2d 234, 235 (9th Cir. 1988) (while "[a] plea of guilty is voluntary 'only if it is "entered by one fully aware of the *direct* consequences" of his plea,' " there is no

requirement that a court advise a defendant of all possible collateral consequences of a guilty plea (emphasis in original)); *United States v. Brownlie*, 915 F.2d 527, 528 (9th Cir.1990) ("The possibility that the defendant will be convicted of another offense in the future and will receive an enhanced sentence based on the instant conviction is not a direct consequence of a guilty plea.").

the voters' intent in passing the initiative version of the Three Strikes Law was to " 'strengthen' " and preserve the legislative version of the Three Strikes Law).

Even if, somehow, Ground Eleven could be liberally construed to state a claim of constitutional dimension (and the Court is not sure how it could be so construed), Petitioner's allegations do not establish any basis for federal habeas relief.

> The Three Strikes law consists of two, nearly identical statutory schemes designed to increase the prison terms of repeat felons. The earlier provision, which the Legislature enacted, was codified as [California Penal Code] section 667, subdivisions (b) through (I). The later provision, which the voters adopted through the initiative process, was codified as [California Penal Code] section 1170.12.

*Romero,* 13 Cal.4th at 504, 53 Cal.Rptr.2d at 791, 917 P.2d 628. Under operation of *either* statute, a convicted defendant's qualifying prior convictions may be utilized as "strikes" under the Three Strikes Law when the defendant has been convicted of "a" current felony, whether or not the current felony is classified as "serious" or "violent." *See* Cal.Penal Code §§ 667(b)-(i), 1170.12(a)-(d); *Ewing,* 538 U.S. at 15–17, 123 S.Ct. at 1182–83; *Andrade,* 538 U.S. at 67–68, 123 S.Ct. at 1170–71. Thus, Petitioner's assertions—that the statute passed by the California Legislature was superceded and/or that there is a purported, if unidentified, conflict between the two enactments—raise no constitutional concern, because under either enactment, Petitioner was eligible to be sentenced as a Three Strikes defendant due to the trial court's finding that both the 1995 and 1996 convictions constitute "strikes." Put otherwise, Petitioner was eligible to receive a Three Strikes sentence, and his allegations (including that he was entitled to sentencing under the later initiative version

alone), even if true, have no bearing on the sentence he received. He would have received the same even had he been sentenced pursuant only to the later initiative enactment.

Ground Eleven does not state any claim of constitutional magnitude. Accordingly, the Court should deny Petitioner's eleventh claim.

E. *The Alleged After–The–Fact Increase In Punishment For Petitioner's Prior "Strike" Convictions And The Estoppel And Ex Post Facto Principles Purportedly Applicable Here*

Grounds Six and Twelve raise related contentions regarding the legitimacy of enhancing Petitioner's sentence based on his Prior Strikes. (Petition Att. at 4–6.) In Ground Six, Petitioner appears to contend that the nature of the plea agreements underlying the Prior Strikes convictions estopped the prosecutor from alleging that those 1995 and 1996 convictions were serious felonies and constituted "strikes." Petitioner characterizes the alleged error as a violation of due process and equal protection arising from the prosecution's ability to "relitigate [the 1995 and 1996] prior plea agreements" by "question[ing] there [*sic*] validity to improve it's [*sic*] position." (Petition Att. at 4–5.) Petitioner asserts in Ground Twelve that his Three Strikes sentence violates the Ex Post Facto Clause, because the Three Strikes Law was enacted to increase punishment "beyond that when the crime was committed." (Petition Att. at 6.)

■ Ground Twelve fails under well-established law. The Supreme Court has "repeatedly upheld recidivism statutes 'against contentions that they violate constitutional strictures dealing with double jeopardy, ex post facto laws, cruel and unusual punishment, due process, equal

protection, and privileges and immunities.' " *Parke v. Raley*, 506 U.S. 20, 27, 113 S.Ct. 517, 522, 121 L.Ed.2d 391 (1992) (citations omitted). The use of the 1995 and 1996 convictions to enhance Petitioner's current sentence under the Three Strikes Law did not alter or increase his punishment for the 1995 and 1996 convictions, because this enhancement was not punishment for the prior offenses but, rather, is a "recidivist" penalty for the current conviction. *See, e.g., Monge v. California*, 524 U.S. 721, 728, 118 S.Ct. 2246, 2250, 141 L.Ed.2d 615 (1998); *see also Witte v. United States*, 515 U.S. 389, 400, 115 S.Ct. 2199, 2206, 132 L.Ed.2d 351 (1995) (citations omitted) (a sentence under a recidivist statute does not constitute an additional punishment or change to the original penalty for an earlier crime or crimes but, instead, " 'a stiffened penalty for the latest crime' "); *Nichols v. United States*, 511 U.S. 738, 747, 114 S.Ct. 1921, 1927, 128 L.Ed.2d 745 (1994) ("Enhancement statutes, whether in the nature of criminal history provisions such as those provided in the [federal] Sentencing Guidelines, or recidivist statutes that are commonplace in state criminal laws, do not change the penalty imposed for the earlier conviction").

 Further, the Supreme Court has held that recidivist statutes do not raise any ex post facto concern if those statutes were in effect when the latest offense was committed. *See Weaver v. Graham*, 450

U.S. 24, 30, 101 S.Ct. 960, 965, 67 L.Ed.2d 17 (1981).[40] The key to the ex post facto inquiry is the timing of the *present* offense, not the timing of the earlier offenses utilized as priors for enhancement purposes. *See United States v. Arzate–Nunez*, 18 F.3d 730, 734 (9th Cir.1994) ("For purposes of analyzing repeat offender statutes and statutes increasing penalties for future offenses based on past crimes, the relevant 'offense' is the current one, not the predicate crime").[41]

Petitioner committed his present offenses in 1999, well *after* the 1994 effective dates of both provisions of the Three Strikes Law. (CT 13–17; Lodg. No. 5 at 3–4; *Romero*, 13 Cal.4th at 505, 53 Cal. Rptr.2d at 791, 917 P.2d 628; Cal.Penal Code § 667 (eff. Mar. 7, 1994) and § 1170.12 (approved Nov. 8, 1994, and eff. Nov. 9, 1994.) Because the Three Strikes Law was "on the books" well before Petitioner committed his present offenses, he had fair warning of the consequences of his crimes, including the possibility that any qualifying earlier prior convictions might serve to enhance a conviction for any current offense. Accordingly, Petitioner's ex post facto argument set forth in Ground Twelve is meritless.

Petitioner's Ground Six allegations are equally unavailing. Petitioner's assertion that the prosecutor sought to relitigate the plea agreements underlying the Prior Strikes and questioned their validity is

---

**40.** *See also United States v. Kaluna*, 192 F.3d 1188, 1199 (9th Cir.1999) (*en banc*) ("The Supreme Court and this court uniformly have held that recidivist statutes do not violate the Ex Post Facto Clause if they are 'on the books at the time the [present] offense was committed' ") (citation omitted); *United States v. Ahumada–Avalos*, 875 F.2d 681, 683–684 (9th Cir.1989) (sentence enhancement passes constitutional muster if the enhancement statute "was on the books at the time [defendant] committed the [present] offense").

**41.** Thus, Petitioner's apparent contention that the 1994 enactment of the Three Strikes Law occurred after he committed the offenses underlying his 1995 and 1996 convictions is irrelevant. Moreover, and in any event, Petitioner's contention is not true, as the 1995 and 1996 conviction offenses occurred *after* the enactment of both Three Strikes laws. The 1996 conviction rests on a February 13, 1996 offense. (CT 195, 255.) The 1995 conviction rests on a November 12, 1994 offense. (*See* Probation Report, lodged under seal on September 23, 2005, at 6.)

noticeably lacking in any citation to the record and is baseless. There is nothing in the record to support this assertion. (*See* 2RT 1–105, the record of the various sentencing proceedings.) Petitioner's assertion that the prosecutor failed to plead these two strike allegations properly is equally baseless. The Information filed on May 14, 1999, alleged that the 1995 conviction was a serious felony within the meaning of California Penal Code §§ 1170.12(a)-(d) and 667(b)-(i), and the Amended Information filed on July 27, 1999, alleged that both the 1995 conviction and the 1996 conviction were serious felonies within the meaning of California Penal Code §§ 1170.12(a)-(d) and 667(b)-(i). (CT 11, 15.)

To the extent that Petitioner is arguing in Ground Six that the nature of the pleas in connection with the 1995 and 1996 convictions somehow barred their use for enhancement purposes in a *later* case, his contention is without factual or legal support. Petitioner does not allege (nor does the record before the Court indicate) that, at the times his two earlier "strike" convictions were sustained, the prosecutor or the trial court expressly represented to him that the prior convictions (pursuant to plea agreements) would *not* be used to enhance his sentence should he suffer a future felony conviction. In fact, he was told just the opposite. In the 1995 case, before Petitioner entered his plea, the prosecutor expressly advised Petitioner that, "[b]ecause this is [a] serious felony, which is first degree burglary, this conviction[ ] will later enhance any sentence you receive on other felonies." (Lodg. No. 43, plea hearing transcript at 7). Prior to taking Petitioner's plea in the 1996 case, the trial court expressly advised Petitioner that one consequence of his plea to the charged

offense was that it was "priorable," explaining to Petitioner this "means that if you are convicted of a felony in the future your plea today can be used as another prior to deny you probation and to increase your punishment." (CT 193.) There is simply nothing about the 1995 and 1996 convictions that precluded the prosecutor from alleging, and the trial court from finding, them to be "strikes."

For all the reasons set forth above, the vague and unsupported assertions of Grounds Six and Twelve fail to implicate any constitutional concerns. Accordingly, both claims should be denied.

F. *Petitioner's Parole Status And/Or The Purported Failure To Allege The Relevant Statute In The Information As Precluding Application Of The Three Strikes Law*

By Grounds Thirteen and Seventeen, Petitioner asserts that the prosecutor was barred from pursuing a Three Strikes sentence enhancement for two reasons. (Petition Att. at 6–8.)

In Ground Thirteen, Petitioner alleges that, at the time of his present offenses, he was on parole pursuant to his 1995 conviction, and he repeats his allegation that the 1995 conviction was "void" due to the reference to "Section 449" in the 1995 sentencing hearing. He also complains that he "was violated on probation and illegally sent to prison in 1996." (Petition Att. at 6.) Petitioner does not explain, however, why these alleged events render the Three Strikes Law inapplicable to him. Petitioner cites no authority for his contention [42] that a recidivist who commits an additional crime while he is on parole for a prior conviction is immunized from application of recidivist sentencing provisions such as the Three Strikes Law.

42. *See* Traverse at 80 ("the Three Strikes law, [*sic*] can not be used against a person whom is currently on parole, or imprisoned").

The Court certainly knows of no such authority. Indeed, as Respondent aptly notes, a recidivist who is on parole at the time he commits additional crimes would appear to be the very type of person to whom the Three Strikes Law was intended to apply. In his Traverse, Petitioner also complains at length about an allegedly unconstitutional parole term imposed pursuant to a 1994 conviction in Case No. BA074988. (Traverse at 80–83, Ex. AA–6.) While Petitioner attacks the validity of the parole imposed pursuant to his 1994 conviction, he does not explain why any purported issues surrounding his earlier parole status are of any concern here, particularly in view of the *Lackawanna* bar and its preclusion of Petitioner's apparent attack on this 1994 conviction. While Petitioner attempts to somehow tie the alleged invalidity of his 1994 conviction parole term to the availability of his 1995 and 1996 convictions to serve as "strikes," his garbled assertions not only are unclear, but raise no constitutional issues. Petitioner's allusion to California Penal Code § 667.5(g) is meaningless, as that enhancement provision is irrelevant to Petitioner's Three Strikes sentence.[43] Ground Thirteen, in short, establishes no basis upon which the Court can find that Petitioner

was exempt from application of the Three Strikes Law based on his 1995 and 1996 convictions.

Petitioner's Ground Seventeen allegations are equally irrelevant. Petitioner's complaint that the Amended Information failed to include references to California Penal Code §§ 667(e)(2)(A) and 1170.12(c)(2)(A) is frivolous. As noted earlier, the Amended Information alleged that the 1995 and 1996 convictions were serious felonies within the meaning of California Penal Code §§ 667(b)-(i) and 1170.12(a)-(d). (CT 15.) These allegations, thus, encompassed references to subpart (e) of Section 667 and subpart (c) of Section 1170.12. There is no requirement under California law that the prosecutor have *further* alleged additional references to particular subparts of the statutory provisions actually cited.[44]

Grounds Thirteen and Seventeen are factually and legally baseless. These two claims, therefore, should be denied.

G. *The Allegedly Arbitrary And Inconsistent Manner In Which The Three Strikes Law Is Applied*

In Ground Sixteen, Petitioner contends that the Three Strikes Law is applied in an

---

43. Section 667.5 provides for the enhancement of prison terms for new offenses based on prior prison terms. Subsection (g) defines the term "prior separate prison term" as used in the statute. This enhancement provision is entirely separate from the Three Strikes Law. Moreover, as noted earlier, the trial court struck the seven prior prison terms enhancements found to be true when imposing Petitioner's sentence.

44. In his Traverse, Petitioner appears to assert a new claim, *to wit,* that the judge at his initial court trial issued an order that barred the prosecutor from alleging an additional "strike" conviction in connection with Petitioner's jury trial following the vacating of the court trial verdict. (Traverse at 94–95 (*citing* RT 316, 909–10.) While it is true that, at the

close of the initial court trial, the trial court declined to allow the prosecution to pursue an additional "strike" allegation that had been added in an Amended Information filed after Petitioner waived his right to a jury trial, that is all the court trial judge did; nothing in his ruling purported to bind the prosecutor for purposes of any future trial. (*Id.* at 316, 909–12.) As discussed earlier, the court trial verdict was set aside at Petitioner's request, and the prosecutor had the trial court's permission to pursue the additional "strike" allegation (as Petitioner was repeatedly advised would occur if the court trial verdict were set aside). (1RT 1–3.) In short, the trial court plainly did not preclude amendment to allege an additional "strike" once Petitioner elected to be retried before a jury, and Petitioner's assertion to the contrary is factually baseless.

arbitrary and inconsistent manner, in violation of due process. In his Petition, he alleges that a "New Policy" of the Los Angeles District Attorney's Office, which omits convictions pursuant to California Health & Safety Code § 11350(a) from Three Strikes consideration, should have been applied to him. In his Traverse, he alleges that the reason why his Three Strikes sentence was arbitrary and capricious is the same as that set forth in Ground Ten, *to wit,* the trial court's failure to examine the plea hearing transcript for the 1995 conviction meant that the evidence was insufficient to establish the truth of the 1995 conviction "strike" allegation. (Petition Att. at 8; *see also* Traverse at 93–94.)

As discussed above, the evidence was sufficient to support the trial court's "true" finding on the 1995 "strike" allegation, and thus, Petitioner's Ground Ten sufficiency of the evidence argument is meritless. As also discussed above, Petitioner properly was subjected to an enhanced sentence pursuant to the Three Strikes Law, and no state law sentencing error has occurred. As previously noted, a challenge to a state court's application of state sentencing laws does not create a federal question cognizable in federal habeas review. *See Lewis,* 497 U.S. at 780, 110 S.Ct. at 3102. To state a cognizable federal habeas claim based on a claimed state sentencing error, a petitioner must show not only sentencing error but also that the error was "so arbitrary or capricious as to constitute an independent due process" violation. *Richmond,* 506 U.S. at 50, 113 S.Ct. at 536. ▮▮▮▮ As there was no state sentencing error, there can be no due process violation. Petitioner's mere complaint that the prosecutor should have exercised her charging discretion in a more liberal manner, as other prosecutors may have done in later cases, does not establish a due process violation. The Supreme Court has

made clear that prosecutors possess wide discretion in deciding "whether or not to prosecute, and what charges to bring or file . . . ." *Wayte v. United States,* 470 U.S. 598, 607, 105 S.Ct. 1524, 1530, 84 L.Ed.2d 547 (1985). The prosecutor's mere exercise of " 'some selectivity in enforcement is not in itself a federal constitutional violation' so long as 'the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.' " *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978) (quoting *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 505, 7 L.Ed.2d 446 (1962)). Petitioner does not allege any such "unjustifiable standard." Rather, he merely complains that he did not receive the benefit of a "new policy" promulgated after his conviction. This does not constitute a federal constitutional violation.

Accordingly, Ground Sixteen should be denied.

### H. *The Alleged Improper Calculation Of Petitioner's Conduct Credits*

In Ground Nineteen, Petitioner contends that his custodian, the CDCR, has failed to calculate his conduct credits properly in connection with his Three Strikes sentence, in purported conflict with the term of custody actually prescribed by the trial court at sentencing and/or state law requirements concerning the CDCR's calculation of such credits. More specifically, Petitioner contends that: although the trial court allegedly ordered that his Three Strikes sentence be served at "50 per cent," the abstract of judgment failed to acknowledge this sentencing order; and because Petitioner's convictions are for non-violent felonies, he is entitled to receive goodtime/worktime credits applied against his sentence. (*See* Petition Att. at 9; Traverse. at 103–06.)

■ Petitioner's contentions fail for two reasons. First, the California Supreme Court has made clear that the Three Strikes Law does not authorize the award of prison conduct credits against a Three Strikes indeterminate term, and "[i]n the absence of authorization for use against indeterminate terms, ... prison conduct credits are simply unavailable." *In re Cervera*, 24 Cal.4th 1073, 1078–79, 103 Cal.Rptr.2d 762, 765, 16 P.3d 176 (2001). In *Cervera*, the state high court expressly found that prison conduct credits may not be awarded against a Three Strikes indeterminate term, and it rejected the argument that such credits may be awarded against the minimum term portion of such a sentence. *Id.* at 1080–82, 103 Cal.Rptr.2d at 766–68, 16 P.3d 176. Hence, California law bars Petitioner's argument.

Second, contrary to Petitioner's assertion, the CDCR has credited Petitioner with the custody and conduct credits found by the trial court. At sentencing, the trial court imposed a six-month sentence for Count 2, to run concurrently with the indeterminate, Three Strikes sentence imposed for Count 3. The trial court found that Petitioner was entitled to receive 1,129 days of credit, based on 813 days of custody credits and 406 days of goodtime/worktime credits. (RT 102–04; CT 301.) The abstract of judgment, in fact, reflects this credits finding. (CT 316.) While these credits ultimately may not result in a net reduction of the days served pursuant to Petitioner's indeterminate sentence, the CDCR did appropriately credit them to Petitioner.

There has been no state law or other error in connection with the credits due Petitioner. Ground Nineteen, thus, provides no basis for federal habeas relief.

I. *Petitioner's Alleged Entitlement To Be Sentenced In Accordance With Rejected Plea Offer(s)*

In Ground Nine, Petitioner contends that, in lieu of his Three Strikes sentence, he was entitled to receive the sentence first suggested by a prosecutor in an early plea offer, notwithstanding that Petitioner rejected not only that plea offer but also subsequent plea offers and, instead, opted to proceed to both a court and then a jury trial on the charges against him. (Petition Att. at 5; Traverse at 72–74; *see also, e.g.,* RT A6, 911–12; 1RT 48.)

The record before the Court reflects the following events with respect to what plea terms the prosecutor may have offered Petitioner during the course of this criminal action. As noted earlier, Petitioner initially waived his right to a jury and agreed to a court trial. (RT A2–A7; CT 22.) Just after Petitioner's jury waiver and before the commencement of the court trial, on July 23, 1999, the prosecutor indicated that there had been a plea offer of "[s]ix year low term times two on the robbery count," which Petitioner rejected without making a counter-offer. (RT A6.) At that time, only one prior "strike" conviction was alleged in the Information (CT 11), thereby raising the potential for doubling whatever Petitioner's sentence might be, *i.e.,* as a second "strike" sentence. Thus, the prosecutor offered a plea deal of a second strike sentence of 12 years, with robbery as the principal term, which Petitioner flatly rejected.

As noted earlier, during the court trial, the prosecutor unsuccessfully sought to pursue a second "strike" allegation, which would have raised Petitioner's potential exposure to one or more Three Strikes sentences of 25–years–to life. (RT 316, 909–12.) The trial court noted that, had the action become a third strike case rather than a second strike case, Petitioner "could

get, goodness, something in the mid to high 30's to life." (RT 911.) Petitioner's counsel at the time noted that he had "communicated much lower offers to [Petitioner] prior to the jury waiver." (*Id.*) The trial court asked, "[w]as there a 4 year offer in this case?" (RT 911–12.) Counsel responded, "I know there was a 6. I am not sure about 4." [45] (RT 912.) With reference to "a 6," it is unclear whether counsel was referring to the above-described plea offer by the prosecutor (a six-year term potentially doubled as a second strike to a 12–year term) or to a different offer of six years. In any event, the record indicates that Petitioner rejected all prosecution plea offers made prior to and/or during the court trial.

After the court trial verdict was set aside at Petitioner's request, and following jury selection, the trial court noted that the prosecution had made a plea offer, which was pending, and observed that, even if Petitioner was not convicted on the robbery and petty theft charges and convicted only of the heroin charge, he faced a lengthy sentence:

> Now, I have to tell you, if you fall on this heroin thing, with the strike priors and the number of other convictions you have here, there is a high likelihood—I am not promising you anything, because I don't know the facts. I don't know enough about your background, and your attorney has not had a chance to argue on your behalf as to the appropriate sentence in this matter, but there is a high likelihood that you'd get 25 to life.

(1RT 47–48.) The prosecutor then described the plea offer as "nine with the strike or thirteen without a strike." (1RT 48.) The trial court explained to Petitioner what such alternate sentences would mean in terms of time served, and reiterated that "with the amount of prior convictions" Petitioner had, "it does not look good" and a 25 years to life sentence was likely. (1RT 48–51.) Petitioner was given the weekend to consider the offer. (1RT 50–52.) When the trial judge reminded Petitioner of the plea offer on the following Monday and asked if Petitioner wanted "to explore any of that" or bring the jury in to start trial, Petitioner responded, "Your Honor, you can bring the jury in." (1RT 90.)

The basis for Petitioner's contention that he was entitled to be sentenced in accordance with the prosecution's initial four-year plea offer is unclear. Petitioner appears to contend that: at a March 5, 2001 post-conviction hearing, the trial judge purportedly was "leaning towards" imposing a sentence of 16 months each on Counts 2 and 3, for a total of 32 months, but wanted to review the February 16, 2005 plea hearing transcript for the 1995 conviction before deciding on a sentence; none of the evidence before the trial judge as of that date was sufficient to warrant imposition of a Three Strikes sentence; because the trial judge lacked the February 16, 2005 plea hearing transcript, it was improper to impose a Three Strikes sentence and thereby "punish" Petitioner for exercising a constitutional right; and as a result, Petitioner was entitled to receive the four-year sentence contained in the prosecution's original plea offer. (Traverse at 74; *see also* Petition Att. at 5.)

---

**45.** Petitioner asserts that previously, *i.e.*, on May 4, 1999, at the time he was arraigned, the prosecutor made a plea offer of "four years." (Petition Att. at 5; Traverse at 73.) While there is no evidence of this offer in the record, the record contains some inferential support for Petitioner's contention. (*See* RT 911–12.) Accordingly, for purposes of argument, the Court has assumed that such a plea offer was made and rejected. However, the assumed existence of this plea offer makes no difference to the Court's analysis and conclusion regarding Ground Nine, for the reasons discussed *infra*.

Petitioner's Ground Nine argument, thus, rests on the same contention previously rejected by this Court in connection with Ground Ten, namely, Petitioner's contention that the evidence was insufficient to find that he was a Third–Striker, because the trial court did not review the February 16, 1995 plea hearing transcript before finding the 1995 and 1996 convictions to constitute "strikes." For the reasons stated above, this contention is meritless, because the February 16, 1995 transcript does not have any effect on the substantial evidence establishing that Petitioner sustained the 1995 and 1996 convictions and they constituted valid convictions.

Moreover, Petitioner substantially mischaracterizes the March 4, 2001 hearing. The transcript, fairly read, shows that the trial judge discussed at some length the possibility that Petitioner faced a lengthy sentence based on his numerous prior convictions, and then simply noted that, absent *any* sentence enhancement based on his prior "strikes" and prison terms, Petitioner faced "at a minimum" the low term of 16 months on each of the two counts of conviction, for a total of 32 months. (2RT 30–37.) It was Petitioner's counsel who urged the trial court to review the plea hearing transcript for the 1995 conviction alleged as the first "strike"; the trial court simply responded, "If you want me to take a look at the plea transcript . . ., you want to order it and have it, I will give you the time to do it, and I will look at it." (2RT 34–35.)

■■■■ Plea agreements are construed under ordinary rules of contract interpretation. *See, e.g., Brown v. Poole*, 337 F.3d 1155, 1159 (9th Cir.2003). A criminal defendant has a due process right to enforce the terms of a plea agreement into which he and the prosecutor entered. *See Santobello v. New York*, 404 U.S. 257, 261–62, 92 S.Ct. 495, 498–99, 30 L.Ed.2d 427

(1971). But in this case, Petitioner did not enter into any plea agreement. Instead, he rejected each of the prosecutor's plea offers. Those rejections terminated the plea offers, which then ceased to exist. *See, e.g., Beverly Way Associates v. Barham*, 226 Cal.App.3d 49, 55, 276 Cal.Rptr. 240, 244 (1990) ("It is hornbook [law] that an unequivocal rejection by an offeree, communicated to the offeror, terminates the offer; even if the offeror does no further act, the offeree cannot later purport to accept the offer and thereby create enforceable contractual rights against the offeror."). Petitioner had no right, contractual or constitutional, to be sentenced in accordance with plea offers he had rejected.

■■■■ To the extent that Petitioner's fleeting reference in his Traverse (at 74) to the impropriety of punishing a defendant for exercising a constitutional right could be construed as a claim of judicial vindictiveness for Petitioner's exercise of his right to proceed to trial, Petitioner still does not establish a basis to overturn his sentence. Punishing a criminal defendant with a harsher sentence simply for exercising his constitutional rights violates due process. *See, e.g., United States v. Goodwin*, 457 U.S. 368, 372, 102 S.Ct. 2485, 2488, 73 L.Ed.2d 74 (1982); *Bordenkircher*, 434 U.S. at 363, 98 S.Ct. at 668. However, unless an increased sentence, following rejection of a plea offer, is rendered in circumstances that create a "reasonable likelihood" of vindictiveness on the part of the sentencing judge, the burden is on the defendant to prove actual vindictiveness. *Alabama v. Smith*, 490 U.S. 794, 799–800, 109 S.Ct. 2201, 2205, 104 L.Ed.2d 865 (1989). When nothing in the record suggests that a trial judge acted with improper motivation and imposed a particular sentence in retaliation for a defendant's choice to reject a plea offer and proceed to

trial, impermissible punishment cannot be found. *See United States v. Vasquez–Landaver,* 527 F.3d 798, 805–06 (9th Cir.2008).

Petitioner has not alleged any circumstances, much less adduced any evidence, indicating or giving rise to an inference that the trial court's imposition of a Three Strikes sentence was vindictive and imposed as punishment for Petitioner's failure to accept a plea offer. The Court has read the record very carefully and concludes that only the opposite conclusion (*i.e.,* a lack of vindictiveness) can be drawn.

The record makes plain that: the trial judge endeavored to give Petitioner ample time to consider the plea offer and apprised Petitioner of the risks he faced if he rejected that offer (1RT 47–52); the trial judge repeatedly noted that he was "happy" to conduct a jury trial, if that was what Petitioner wanted (*see id.* at 51, noting "it's not like I get out of the work" when a plea offer is rejected and the case proceeds to trial); the trial judge carefully considered, and struggled with, the issue of whether Petitioner should receive a Three Strikes sentence, including the issue of whether any of Petitioner's strikes should be stricken (2RT 1–10, 14–21, 23–39, 51–69, 74–101; *see also* 2RT 30, reflecting that the trial judge noted, "This is a very, very difficult case for me," and 2RT 59, reflecting that the trial court noted, "I would consider a reasonable second strike sentence as well"). Ultimately, after having "looked hard and carefully," the trial judge concluded that, based on the records before him, it would be an abuse of discretion to strike either of the two "strikes," and thus, he was required to impose a Three Strikes sentence.[46] (2RT 101–102.) Moreover, although the trial court could have imposed two 25 years to life sentences (*i.e.,* for a total of 50 years to life),

coupled with seven one-year enhancements based on prior prison terms, the trial court exercised discretion to: reduce the Count 2 charge to a misdemeanor, thereby precluding application of a Three Strikes sentence based on that conviction; and struck the seven prior prison term enhancements found true, despite "the court [having] spent considerable time on" wrestling with the evidence of those prior terms. (2RT 101–02.)

As the Ninth Circuit has observed:

When a defendant voluntarily chooses to reject or withdraw from a plea bargain, he retains no right to the rejected sentence. Having rejected the offer of a lesser sentence, he assumes the risk of receiving a harsher sentence. If defendants could demand the same sentence after standing trial that was offered in exchange for a guilty plea, all incentives to plead guilty would disappear. Defendants would lose nothing by going to trial. . . . The reality of plea bargaining is that "[o]nce the defendant elects to go to trial, all bets are off." . . .

*United States v. Carter,* 804 F.2d 508, 513 (9th Cir.1986) (citation omitted).

 This is a case in which there simply is nothing to show that the trial court was vindictive and desired to punish Petitioner for exercising his constitutional right to proceed to trial. The mere fact that the sentence Petitioner ultimately received was substantially longer than that set forth in plea offers in no way establishes vindictiveness or any punishment of Petitioner for exercising his constitutional right to a trial. Under the controlling precedent, the mere fact that Petitioner received a longer sentence following trial is not enough to establish a due process violation. *See Smith,* 490 U.S. at 800 n. 3,

---

46. As discussed earlier, the California Court of Appeal concluded that the trial court had not abused its discretion in sentencing Petitioner as a Three Strikes defendant, a determination under state law to which this Court has deferred.

109 S.Ct. at 2205 n. 3 (due process is not offended by all possibilities of increased punishment, but only by those that pose a realistic likelihood of vindictiveness); *see also Vasquez–Landaver,* 527 F.3d at 806 (rejecting a claim that the defendant's sentence was impermissible punishment for exercising his right to proceed to trial, when "the record does not suggest that the district court gave any improper weight to the failure to enter into the plea agreement"); *United States v. Thomas,* 114 F.3d 228, 272–73 (D.C.Cir.1997) (rejecting an argument that the disparity between five-year plea offer (which defendant rejected) and the life sentence ultimately imposed unconstitutionally penalized defendant's exercise of his " 'right to go to trial' "). While the sentence Petitioner received is a harsh one, there is no basis for concluding that its harshness stems from vindictiveness on the part of the trial court. Hence, Petitioner has not met his burden, and no constitutional violation has been shown.

Accordingly, for the reasons set forth above, Ground Nine should be denied.

### J. The Failure To Sentence Petitioner To A Probationary Term And Drug Treatment

In Ground Twenty–Three, Petitioner contends that, based on his Count 3 conviction for possession of heroin, he should not have received a Three Strikes sentence and was entitled to be sentenced to a probationary term and a drug treatment program pursuant to Proposition 36.[47] Petitioner appears to contend that the failure to sentence him pursuant to Proposition 36 constituted a violation of the Due Process

and Equal Protection Clauses. (Petition Att. at 10; Traverse at 112–18.) Petitioner's arguments are devoid of merit for two reasons.

First, Proposition 36 was passed on November 7, 2000, and became effective July 1, 2001. By its terms, Proposition 36 applies prospectively to defendants "convicted" on or after July 1, 2001. *In re DeLong,* 93 Cal.App.4th 562, 568, 113 Cal. Rptr.2d 385, 389 (2001). The term "convicted," as used in Proposition 36, has been interpreted by one California appellate court to include defendants who were convicted prior to July 1, 2001, but who were not sentenced until after that date. *Id.* at 569–70, 113 Cal.Rptr.2d at 390–91; *but see People v. Mendoza,* 106 Cal.App.4th 1030, 1035, 131 Cal.Rptr.2d 375, 378 (2003) (disagreeing with *DeLong* and holding that Proposition 36 applies only to defendants convicted on or after July 1, 2001). Petitioner was convicted on September 1, 2000, and was sentenced on May 21, 2001. (CT 161, 300–01, 315.) Thus, on that basis alone, he was ineligible for sentencing under Proposition 36.[48]

Second, Proposition 36, by its terms, excludes from its scope recidivist offenders, such as Petitioner. California Penal Code § 1210.1(b)(2) provides that Proposition 36 is not applicable to any defendant who, in addition to sustaining a nonviolent drug possession offense, also is convicted in the same proceeding of any felony or of a misdemeanor not related to the use of drugs. Petitioner was convicted not only of Count 3, but also of Count 2 (petty theft with a prior theft conviction), a felony that the trial court reduced to a misdemeanor.

---

47. Proposition 36 is the commonly-used term for California Penal Code § 1210.1, which provides that, under certain circumstances, a person convicted of a nonviolent drug possession offense may receive probation and drug treatment rather than jail/prison time.

48. Petitioner's assertion that it necessarily violates the Equal Protection Clause for a statute, such as Proposition 36, to be given prospective application only (Traverse at 114) is patently meritless and does not warrant discussion.

That Count 2 conviction precluded application of Proposition 36. In addition, California Penal Code § 1210.1(b)(1) provides that Proposition 36 is not applicable to any defendant who has sustained one or more violent or serious felony convictions within the meaning of California Penal Code §§ 667.5(c) and 1192.7(c), unless the current drug offense occurred after a period of five years in which the defendant remained free of custody and of non-drug felony offenses or certain types of misdemeanor offenses. Petitioner's 1995 conviction was a violent and serious felony within the meaning of Sections 667.5(c)(21) and 1192.7(c)(18), respectively, the instant Count 3 drug offense was committed within five years of the 1995 conviction, and Petitioner had been incarcerated within the prior five-year period. Thus, Petitioner was ineligible for Proposition 36 treatment by its very terms. Put otherwise, even if Petitioner had not been subject to a Three Strikes sentence, the trial court could not have imposed a Proposition 36 sentence on Petitioner without violating California law.

As Petitioner plainly could not have been sentenced pursuant to Proposition 36 for his Count 3 offense, the trial court did not commit any error, much less a constitutional violation, in failing to sentence Petitioner to probation and a drug treatment program. Petitioner's due process and equal protection arguments are baseless. Accordingly, Ground Twenty–Three should be denied.

IV. *Petitioner's Claims Of Prosecutorial Misconduct Do Not Warrant Federal Habeas Relief.*

Grounds Seven, Fifteen (as amended), and Twenty–Six rest on alleged prosecutorial misconduct at trial, principally in the form of the prosecution's purported suppression or delay in the production of evidence, and misconduct or vindictiveness in certain of the prosecutor's charging decisions. (Petition Att. at 5, 7–8, 11.) Each of these allegations of prosecutorial misconduct fails when examined in the light of the law and the record.

A. *Suppression of Evidence*

By Ground Seven, Petitioner contends that the prosecutor suppressed the evidence contained in certain exhibits Petitioner has submitted with his Petition, specifically, copies of documents he obtained after his conviction pursuant to a subpoena served on the Los Angeles Police Department. (*See* Pet. Lodg., Vol. 3, Exs. Q1–5, Q8, Q9, Q14, Q17–Q23.) By one of his Ground Fifteen subclaims, Petitioner contends that the prosecutor suppressed the production of police reports and failed to provide timely discovery of the tape recording of a 911 call. By Ground Twenty–Six, Petitioner contends that the prosecutor failed to turn over in discovery the gloves found in Petitioner's possession at the time of his arrest, which the victim claims belonged to him, as well as photographs taken by the police of the gloves and the contraband found when Petitioner was arrested.

In *Brady, supra,* the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. at 1196–97. Impeachment evidence, as well as exculpatory evidence, falls within the *Brady* rule, and the prosecutor is obligated to disclose both, even in the absence of a specific discovery request. *See United States v. Bagley,* 473 U.S. 667, 676–77, 105 S.Ct. 3375, 3380–81, 87 L.Ed.2d 481 (1985). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either

because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene,* 527 U.S. 263, 281–82, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999).

■ The third element identified in *Strickler,* prejudice, is also described as "materiality," *i.e.,* that "the suppressed evidence must be material to the guilt or innocence of the defendant." *United States v. Jernigan,* 492 F.3d 1050, 1053 (9th Cir. 2007) (*en banc*). Evidence is material under *Brady* only if there is a " 'reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " *Kyles v. Whitley,* 514 U.S. 419, 433–34, 115 S.Ct. 1555, 1565, 131 L.Ed.2d 490 (1995) (*citation omitted*). A "reasonable probability" means a probability "sufficient to undermine confidence in the outcome" of the trial. *Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383; *see also Kyles,* 514 U.S. at 434, 115 S.Ct. at 1566 (focal question under *Brady* is "not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence").

As a threshold matter, Petitioner's *Brady* allegations fail for the most part, because, with one arguable exception discussed *infra,* there is no showing of the requisite suppression element. The documents on which Petitioner bases his suppression claims consist of several types of items: (1) documents relating to Petitioner's *own* post-conviction efforts to subpoena documents from the Los Angeles Police Department (*e.g.,* Pet. Lodg., Vol. 3, Exs. Q1–5, Q20–Q23); (2) documents relating to

Petitioner's *own* post-conviction misconduct complaints against police officers (*e.g.,* Pet. Lodg., Vol. 3, Exs. T, AA8–AA9); (3) Los Angeles Police Department ("LAPD") records pertaining to the crime reported and investigated (Pet. Lodg., Vol. 3, Exs. Q8–Q9, Q14, Q17–Q19); (4) the 911 tape of the call made by the victim and his mother; and (5) a March 5, 1999 report by a parole agent regarding Petitioner's arrest, recommending that a parole hold be retained (Pet. Lodg. Ex. R).[49]

■ As to Category (5), the report of Petitioner's parole officer, Petitioner admits that his trial counsel "had the report." (Pet. Lodg., Vol. 3 at 6; *see also* RT 317, counsel's indication at the court trial that he might call the parole officer to testify about statements the victim made about the gloves.) As to Categories (1) and (2), the documents that came into existence *after* Petitioner's conviction and were generated by Petitioner himself and by LAPD Custodians of Records and LAPD Internal Affairs personnel in responding to Petitioner's post-conviction subpoena efforts and misconduct complaints, these post-conviction documents—generated outside of and following the criminal investigation and prosecution of Petitioner—do not fall within the scope of the prosecutor's disclosure duty in connection with Petitioner's earlier criminal proceeding.

■ With respect to Category (4), the 911 tape, Petitioner does not assert that the prosecutor failed to produce the tape; rather, he asserts that the prosecution's disclosure of the tape was untimely. Petitioner, however, provides no support for his assertion that the 911 tape was disclosed belatedly, and there is no evidence of any untimely disclosure of that tape. At a hearing at the start of Petitioner's

---

**49.** The sixth category of documents Petitioner contends were suppressed—photographs of the gloves and contraband found in his pos-

session when he was arrested, as well as the gloves themselves—are discussed separately *infra.*

jury trial, in which the trial court and the parties discussed the form of the transcript of the 911 tape to be used, Petitioner's counsel at no time indicated that there had been a delay in the production of the tape itself or of the proposed transcription. (ART 1–6.) Thus, to the extent it is premised on a purported untimely production of the 911 tape, Petitioner's Ground Fifteen subclaim fails factually. The claim fails legally as well, for he has not alleged, much less shown, any prejudice suffered even if turnover of the 911 tape was delayed.

■■■■■ "*Brady* does not necessarily require that the prosecution turn over exculpatory material *before* trial. To escape the *Brady* sanction, disclosure must be made at a time when [the] disclosure would be of value to the accused." *United States v. Aichele*, 941 F.2d 761, 764 (9th Cir.1991) (citation and internal punctuation omitted; emphasis in original); *see also United States v. Gamez–Orduño*, 235 F.3d 453, 461 (9th Cir.2000) (the due process violation "may be cured, however, by belated disclosure of evidence, so long as the disclosure occurs at a time when disclosure would be of value to the accused"; citation and internal punctuation omitted). The test is whether "the *lateness* of the disclosure so prejudiced [the defendant's] preparation or presentation of his defense that he was prevented from receiving his constitutionally guaranteed fair trial." *United States v. Miller*, 529 F.2d 1125, 1128 (9th

Cir.1976) (emphasis in original). Due process requires only that disclosure be made in sufficient time to permit the defendant to make effective use of the evidence disclosed. *LaMere v. Risley*, 827 F.2d 622, 625 (9th Cir.1987). When a defendant has the opportunity at trial to use information that was disclosed belatedly, even if that information should have been disclosed earlier, there is no prejudice within the meaning of the *Brady* standard. *Aichele*, 941 F.2d at 764. Here, plainly, Petitioner's counsel possessed the 911 tape prior to the commencement of the jury trial, and she had the opportunity to make meaningful use of it, even if, *arguendo*, its turnover was delayed.

■■■■■ With respect to Category (3), *i.e.*, LAPD reports regarding the criminal arrest and investigation, there is no competent showing that these documents were suppressed. Prior to the court trial, Petitioner's counsel stated that discovery was completed. (RT A6.) 99 Prior to the jury trial, Petitioner's counsel stated that she had "all the discovery." (1RT 4.) At both the court and jury trials, Petitioner's counsel referred to the police reports and their substance in examining the victim and arresting officers. (*See* RT 7–9, 307–08; ART 53–56; 1RT 98–99, 127–29.) Even if his counsel did not have all of the ancillary police records to which Petitioner now points, Petitioner nonetheless has not satisfied the *Brady* suppression requirement.[50] " '[W]here the defendant is aware

---

**50.** The documents consist of: portions of March 1, 1999 LAPD Daily Field Activities Reports; a property owners receipt (indicating that several tools were turned over to the victim's mother on September 7, 2001); a March 3, 1999 follow-up investigation report; computer printouts relating to the 911 call and dispatch; and a March 1, 1999 Daily Report from an LAPD sergeant. (Pet. Lodg., Vol. 3, Exs. Q9, Q14, Q17–Q19.) "[T]here is 'no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory

work on a case.' " *United States v. Agurs*, 427 U.S. 97, 109, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976) (citation omitted). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *Id.* at 109–110, 96 S.Ct. at 2400.

Critically, the information contained in these LAPD records is consistent with the evidence presented by the prosecutor, and

of the essential facts enabling him to take advantage of any exculpatory evidence, the Government does not commit a *Brady* violation by not bringing the evidence to the attention of the defense.'" *Raley*, 470 F.3d at 804 (citation omitted). If counsel had believed she needed back-up LAPD records in addition to the police reports she possessed, then defense counsel could have sought such documents by discovery and/or subpoena directly to the police during trial proceedings, as Petitioner did himself post-trial. *Id.* (finding no *Brady* violation when the petitioner "possessed the salient facts regarding the existence of the records that he claims were withheld" by the prosecution, and therefore, petitioner's "counsel could have sought the documents through discovery"); *see also Aichele*, 941 F.2d at 764 (when a defendant has enough information to ascertain the challenged material on his own, there is no suppression under *Brady* ); *United States v. Dupuy*, 760 F.2d 1492, 1501 n. 5 (9th Cir.1985) ("if the means of obtaining the exculpatory evidence has been provided to the defense, the *Brady* claim fails," and when "'defendants ... had within their knowledge the information by which they could have ascertained the supposed *Brady* material, there is no suppression by the government'"; citation omitted).

Grounds Seven and the relevant subclaim of Ground Fifteen, thus, fail to warrant federal habeas relief. Turning to Ground Twenty–Six, Petitioner's complaint

that the prosecutor suppressed the gloves found in Petitioner's possession at the time of his arrest and photographs taken at that time also fail, for the following reasons.

■ With respect to the gloves, the record establishes that, when stopped and arrested by the police, Petitioner was found to be in possession of black gloves that the victim claimed belonged to him. The police did not book the gloves into evidence and, instead, simply gave them back to the victim. (RT 4–5, 304, 308–09.) There is no evidence that this fact—*viz.*, that the gloves were not booked into evidence and were immediately returned to the victim—was not disclosed and/or was hidden from the defense. There plainly is no factual basis for Petitioner's contention that the gloves themselves were suppressed by the prosecutor.

With respect to photographs taken at the time of Petitioner's arrest, the records establishes the following relevant events. At the initial court trial, Officer Chiasson, one of the arresting officers, was asked what he and his partner (Officer Bright) did with the "items" recovered from Petitioner at the time of his arrest, and Officer Chiasson responded, "We took pictures of them, sir, and booked them as evidence." (RT 306.) This response immediately followed Officer Chiasson's testimony about the apparent controlled substances found in a jacket pocket and the money found on Petitioner; only moments earlier, Officer

Petitioner points to nothing in them of actual exculpatory or impeachment value to the defense. His confusing assertion that the documents somehow would have impeached the testimony of one of the arresting officers (Officer Bright)—to the effect that he believed the controlled substance found to be heroin—is unpersuasive. The controlled substance found was subjected to chemical testing, and was correctly identified as heroin and so charged in the Information. (*See, e.g.,* 1RT 44–54; *see also* 1RT 127–28, Officer Bright's testimony that he viewed the drugs found but did not test them, and he is not a trained chemist.) Nothing in the Ex. Q documents proffered by Petitioner could have provided any basis for impeaching the prosecution's case or exculpating Petitioner.

Given the lack of any apparent use to the defense of these ancillary LAPD documents, the Court cannot find that they would satisfy *Brady* 's materiality requirement even if, *arguendo,* they were suppressed within the meaning of *Brady.*

Chiasson had testified that the black gloves found were not booked into evidence and were returned to the victim. Officer Chiasson was not asked to clarify whether his reference to "pictures" included photographs of the black gloves or the controlled substance or both. At the conclusion of Officer Chiasson's testimony, the trial court said to the officer, "You are going to go and bring those photographs back if you can," and Officer Chiasson responded, "Yes, sir. I am going to find out where it is and get it over here." (RT 312.) At a subsequent proceeding in the court trial, five pages of photographs of the "items that Officer Chiasson recovered" were introduced as People's Exhibit 12, which appeared to be photographs of the controlled substance found by the arresting officers. (RT 601–03.)[51]

At the subsequent jury trial, Officer Bright testified that a single Polaroid photograph was taken of the gloves by his partner; he did not believe any other photographs were taken at that time. (1RT 135–36, 141–42.) Officer Bright did not bring the Polaroid to court, and he did not know where it could be located. (1RT 142.) At a sidebar conference during Officer Bright's testimony, Petitioner's counsel complained that she: asked for discovery of all photographs; was told "the only photographs that were taken were of drugs"; "specifically asked for photographs of any jackets or any gloves"; and "was told that there were none." (1RT 137.) The prosecutor stated that she "specifically asked the detective that question, and he told me there were no photographs." (*Id.*) The prosecutor described the efforts she made to obtain all evidence in the case, including questioning the "evidence people" and asking the detective to search for photographs, and the prosecu-

tor advised the court that the detective's response, after conducting a search, was, "we don't have any." (1RT 137–38.) The prosecutor stated her belief that there had been a photograph of the gloves, but it somehow was "lost," and she offered to stipulate to such facts. (1RT 138–40.) Petitioner's counsel noted that she "was not making an accusation." (1RT 140.)

Prior to the start of the defense case, the trial court discussed with the attorneys a possible stipulation and/or jury admonishment regarding the apparently missing photograph(s). (1RT 160–61.) The trial court then stated to the jury:

Now I have had several discussions with the attorneys in this matter and, if you recall, the officer, I believe his name was Bright, testified that he or his partner took a photograph, a Polaroid photograph, of a particular pair of gloves.

Now let me indicate this to you. That photograph has not been proved in court. The location and whereabouts of that photograph is unknown at this particular time.

Attempts have been made by the district attorney to have that [photograph] brought to court, for whatever purpose. [¶] [Petitioner's counsel] has requested it. It cannot be located.

Now, I don't want to say any more. I'm not concluding, not making a conclusion one way or the other whether it was lost through inadvertence or it was intentionally destroyed. [¶] No one knows. It just can't be found at this time, and that's all really I can tell you about it.

. . . .

So what the attorneys will make out of the gloves on the one hand, and the fact that the photograph is not in existence

---

**51.** The record of the court trial does not indicate who took the five pages of photographs. It is possible that they were the photographs taken by Criminalist Sam Ghattas in connection with his testing of the controlled substance. (*See* 1RT 142–45.)

at this time, on the other hand, is something you're going to have to wait and listen to, and then you're to make the determination of what effect that is.

(1RT 163–64.) When asked by the trial court if this was "satisfactory," Petitioner's counsel responded, "Yes." (1RT 164.)

Petitioner then called his mother, Ruby Moore, as his first and only witness. Ms. Moore testified that, in December 1998, she bought several pairs of leather gloves; the gloves had a knit insert and were made by "Tannery West." (1RT 168–69.) She gave a pair to Petitioner. (*Id.*) At the earlier court trial, she produced a receipt for her purchase of the gloves. (1RT 170; *see also* RT 904–05, Ms. Moore's court trial testimony.)

During the jury instruction conference, Petitioner's counsel asked for an instruction regarding the missing photograph. (1RT 176.) The prosecutor objected, noting there was doubt that the photograph ever existed. (1RT 178–79.) The trial judge concluded that a Polaroid was taken but no longer existed, but he repeatedly stated that the situation was one of "inadvertance," rather than suppression, noting: "I don't fault the district attorney in any way on this matter"; and "I wanted the record to be clear. I don't find that there is any shenanigan going on here or that there is anything that's been withheld." (1RT 180.) The trial court thereafter instructed the jury with a modified version of CALJIC No. 2.28, which advised the jury, *inter alia:* of the parties' discovery obligations; that the prosecution lost or was unable to produce a Polaroid photograph of a pair of gloves; that the prosecution's failure to produce the photograph "was without justification"; and that the weight and significance of any loss or inability to locate the photograph was a matter for the jury's consideration. (CT 114–15; 1RT 199–200.)

Given the evidence of record, it is unclear to the Court that the alleged Polaroid photograph taken at the time of arrest of the gloves and/or the controlled substances actually existed. However, as the state court rendered a factual finding that a Polaroid photograph of the gloves existed, which has not been effectively rebutted, the Court will assume that such a Polaroid did exist and could not be located. 28 U.S.C. § 2254(e)(1). Significantly, the state court also rendered a factual finding that there had been no suppression of the photograph or other misfeasance by the prosecutor, characterizing the photograph as simply lost through someone else's inadvertence. The record shows that the prosecutor did attempt to obtain any photographs that existed of the items found when Petitioner was arrested, but her efforts were for naught. The Court, thus, is not persuaded that the requisite element of suppression can be found here; at a minimum, reasonable minds might differ on that conclusion. In any event, Petitioner has not established that the photograph was material within the meaning of *Brady*.

■ The evidentiary purpose of the gloves themselves pertained to the victim's *identification* of Petitioner with respect to the theft counts, rather than the possession of heroin count. (*See, e.g.,* RT 5, 303–04; 1RT 101–02; ART 18–20, 25–26.) At trial, the prosecutor argued that the theft was of the recyclable metal, and *not* of the gloves the victim testified were missing from his backyard and found in Petitioner's possession when he was arrested. (*See, e.g.,* 1RT 234–38, 241, 258–61.) Thus, the victim's identification of the gloves only tended to provide ancillary support for the victim's testimony.[52] But, gloves

---

**52.** In his Traverse, Petitioner argues at length that the victim lied when he testified the gloves belonged to him, because the report by

Petitioner's parole officer included a statement that: the parole officer spoke with the

or no gloves, the victim repeatedly identified Petitioner as the man who had stolen the metal recyclable items from the victim's backyard-an identification that was based on the victim's observations of Petitioner entirely independent of the gloves. (*See, e.g.,* RT 5, 303–04; 1RT 101–02; ART 18–20, 24–26, 41–42.) Moreover, the victim's certain identification of Petitioner was effectively confirmed by Petitioner himself. When Petitioner was arrested, he made the unprompted statement, "I wasn't in nobody's backyard," even though the police had not yet explained why he was being arrested or even mentioned that the crime in issue involved anyone's "yard." (1RT 116–17, 120.) Hence, even if the victim was mistaken about the gloves found in Petitioner's possession when he was arrested, and it could have been shown that the gloves found actually belonged to Petitioner rather than the victim,[53] there is no reason to believe it reasonably probable that the result of Petitioner's trial would have been different. The absence of the gloves themselves and/or any photograph of them does not undermine confidence in the jury's finding that Petitioner was the man identified by the victim. Thus, Petitioner does not establish the materiality of either the gloves themselves or any photographs of them.

With respect to any purported police photograph(s) of the controlled substance found by the arresting officers, Petitioner has not established the element of materiality, or even of impeachment (*or* exculpatory) value in the first instance, for any such photograph(s). At the jury trial, photographs taken by Criminalist Ghattas of the drug container found in the jacket in Petitioner's possession, its contents (including individually wrapped balloons and a tinfoil packet containing what appeared to be narcotics), and an evidence booking envelope for the items themselves were produced, along with testimony by Criminalist Ghattas and Officer Bright regarding those items recovered from Petitioner's person. (*See* 1RT 120–28, 143–54.) The testimony at the jury trial established where the items were found, the chain of custody when the items themselves were booked into evidence, as well as the results obtained by chemical testing of the substances in the container, with such testing establishing that one of the substances was heroin and indicating its weight. (*Id.*) No evidence was adduced to contradict what was recovered from Petitioner and where it was recovered (from the pocket of a jacket in Petitioner's possession). Petitioner does not explain what evidence of value to the defense any photograph of these drug items taken at the arrest site would have provided. Rather, he relies only on rank speculation that any photograph possibly taken by an investigating officer might have shown something different than what was reflected in the crimi-

---

victim, who identified Petitioner as the perpetrator; and the victim clarified that the gloves missing from his backyard actually belonged to his father, although both men used them in their scrap metal recycling efforts. (Pet. Lodg., Vol. 3, Ex. R at 2.) Petitioner's counsel at the court trial was fully aware of this supposed inconsistency (RT 316–17), and as Petitioner admits, both sets of his attorneys possessed the parole officer's report. Thus, Petitioner's counsel could have questioned the victim about this statement (and presumably did not do so, because plainly, whether the gloves used by victim were owned by him or

by his father was irrelevant to Petitioner's guilt or innocence). Counsel's failure to act upon information the defense possessed does not constitute a *Brady* violation.

**53.** Any such finding seems unlikely. The victim described the gloves missing from his backyard and returned to him by the police as worn-out black "Isotoner" brand gloves. (1RT 101.) In contrast, Petitioner's mother described leather gloves that were only approximately two months old at the time of the offense and of a different brand, *i.e.,* "Tannery West."

nalist's photographs, the police reports themselves, and the trial testimony. Petitioner has not established, nor does the record otherwise indicate, the materiality of any such alleged photograph.[54]

For the foregoing reasons, Petitioner has not established a *Brady* violation based on the allegations of Ground Twenty–Six. Accordingly, the Court should deny Grounds Seven, Twenty–Six, and the subject subclaims of Ground Fifteen.

B. *"Barred" Counts And The Transcript Of The 911 Call*

In a further Ground Fifteen subclaim, Petitioner contends that the prosecutor committed misconduct by: (1) alleging the petty theft with a prior and possession of heroin for sale counts in the Information and Amended Information, even though she was purportedly barred from doing so by the "neutral magistrate's" determination that probable cause did not support detaining Petitioner for further proceedings on those counts; and (2) falsifying a document regarding the transcript of a 911 call to imply to the jury that it was an "official document." (Petition Att. at 7–8.)

Habeas relief based on prosecutorial misconduct will be granted only when the misconduct " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974)); *see also Sassounian v. Roe,* 230 F.3d 1097, 1106 (9th Cir.2000) "Th[is] standard allows a federal court to grant relief when the state-court trial was

fundamentally unfair but avoids interfering in state-court proceedings when errors fall short of constitutional magnitude." *Drayden v. White,* 232 F.3d 704, 713 (9th Cir. 2000). "To constitute a due process violation, the prosecutorial misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.' " *Greer v. Miller,* 483 U.S. 756, 765, 107 S.Ct. 3102, 3109, 97 L.Ed.2d 618 (1987) (citation omitted). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips,* 455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78 (1982).

The first contention of this subclaim rests on the same argument alleged in Ground Eight, which this Court already has rejected. As discussed earlier, even assuming that such a finding by a "neutral magistrate" was made, it had no effect on the prosecutor's legal right to reallege Counts 2 and 3, because the prosecutor was entitled to do so under California law. Thus, there was no misconduct, much less any fundamental unfairness, in connection with the inclusion of these two counts in the Information and Amended Information.

With respect to Petitioner's assertion that the prosecutor presented a "false" transcription of the 911 call to the jury, Petitioner asserts that the transcription contained "the wrong date [2000, rather than 1999] and the wrong number of the 911 Police Operator on March 1, 2009." (Traverse at 90.) Petitioner contends that the prosecutor wrongfully presented this "fabricated" document to the jury and misrepresented that it was an "official docu-

---

**54.** Significantly, despite Officer Bright's testimony that the drug items recovered and depicted in the criminalist's photographs offered at trial indicated that Petitioner possessed heroin for *sale* (*see* 1RT 121–27), the jury acquitted Petitioner of the charge of possession for the sale of heroin and convicted him of the lesser offense of possession of the drug. There is no reason to believe that a photograph of the drugs found would have caused the jury to believe that Petitioner did not possess them.

ment." (*Id.*) Petitioner's assertions are baseless. The document on which Petitioner relies (*see* Petitioner Lodg., Vol. 3, Ex. S) is not the same transcript that was presented to the jury as People's Exhibit 1A (*see* CT 87–88, the transcript exhibit at trial). The transcript admitted into evidence did not contain any date at the top (unlike the document now submitted by Petitioner), and thus, it did not contain the "false" year reference about which Petitioner complains. Moreover, the operator number reflected in the transcript (306) was that stated by the 911 operator; the document on which Petitioner relies to purportedly show a different operator number (V9482) appears to refer to a police dispatcher number (*see* Petitioner's Lodg., Vol. # at Ex. Q–18–9). In short, Petitioner has not shown any "falsity" or fabrication effected by the prosecutor with respect to People's Exhibit 1A. Moreover, the audiotape of the 911 call itself was played to the jury, and the victim (who made the call with participation by his mother) confirmed that the audiotape reflected the 911 call that had been placed. (ART 29–32.) Finally, Petitioner's unsupported assertion that the prosecutor somehow represented to the jury that the 911 transcript was an "official document" is simply untrue; a review of the relevant portions of the record shows that no such representations or intimations were made by the prosecutor. (*See* ART 15, 29–30.) There was nothing fundamentally unfair about the 911 transcript actually presented at trial, and there is no basis for finding that the prosecutor committed misconduct with respect to this evidence.

Accordingly, this subclaim of Ground Fifteen must be denied.

### C. The Allegedly Vindictive Prosecution By The Addition Of A Second "Strike" Allegation

In Ground Fifteen, Petitioner asserts as a further subclaim that the prosecutor acted vindictively by amending the Information to add an additional, second "strike" conviction allegation. (Petition Att. at 7.) According to Petitioner, the prosecutor did so in retaliation for Petitioner's rejection of a plea offer and election to proceed with the court trial. (Traverse at 88.)

The original Information, alleging only one "strike" allegation, was filed on May 4, 1999. (CT 9–12, 22.) On July 23, 1999, Petitioner waived a jury and agreed to proceed with a court trial. (RT A2–A7; CT 22.) At the close of that hearing, Petitioner's counsel advised the trial court that the prosecutor had made a plea offer, which Petitioner rejected. (RT A6.) On July 27, 1999, before the court trial commenced, the prosecution filed the Amended Information, which included an additional, second "strike" allegation. (CT 13–17.) On August 4, 1999, the court trial commenced. At the outset of the court trial, the trial judge noted that "[t]he People have noticed an intention to file another alleged strike," and Petitioner's counsel "is on notice of that strike"; the trial judge stated that the issue would be held "in abeyance." (RT 1.) At the close of the court trial, the trial judge and the parties addressed whether the prosecution would be allowed to pursue the additional, second "strike" allegation. (RT 316, 910.) The trial judge concluded that the second "strike" "was filed late," after Petitioner's jury waiver, and thus, it could not be pursued. (RT 910.)

As noted earlier, Petitioner thereafter moved to set aside the court trial verdict, and during the hearing on Petitioner's motion, the trial court repeatedly advised Petitioner that a consequence of setting aside the verdict would be that the case would then proceed as a Three Strikes case. (1RT 1–3; CT 48.) Petitioner acknowledged his awareness of that consequence,

the court trial verdict was then set aside, and the case was set for a jury trial. (*Id.*)

■■■ The Supreme Court addressed prosecutorial vindictiveness in the context of plea negotiations in *Bordenkircher, supra.* While recognizing that a prosecutor may not punish a defendant for doing what the law plainly entitles him to do, the Supreme Court held that due process was not violated when a state prosecutor carried out his threat to re-indict the defendant as a recidivist, if he did not plead guilty to the less serious offense with which he originally was charged. 434 U.S. at 363–64, 98 S.Ct. at 668. The Supreme Court reasoned that, in the give and take of plea bargaining, which flows from the "mutuality of advantage" to both defendants and prosecutors, there is no element of punishment or retaliation "so long as the accused is free to accept or reject the prosecution's offer." *Id.* at 363, 98 S.Ct. at 668.[55] As the Supreme Court held, the prosecutor's conduct—"which no more than openly presented the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution"—did not violate due process. *Id.* at 365, 98 S.Ct. at 669.

Similarly, in *Goodwin, supra,* the Supreme Court held that no presumption of prosecutorial vindictiveness existed when a prosecutor brought felony charges against a defendant after he refused to plead guilty to the misdemeanor charges on which he was originally indicted and demanded a jury trial. The Supreme Court explained that "changes in the charging decision that occur in the context of plea negotiation are an inaccurate measure of

improper prosecutorial 'vindictiveness,' " and a prosecutor may legitimately "file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded." 457 U.S. at 379–80, 102 S.Ct. at 2492. As the Supreme Court observed, "*Bordenkircher* made clear that the mere fact that a defendant refuses to plead guilty and forces the government to prove its case is insufficient to warrant a presumption that subsequent changes in the charging decision are unjustified." *Id.* at 383, 102 S.Ct. at 2493. In declining to find that any presumption of vindictiveness exists when charges are increased by the prosecutor following the defendant's rejection of a plea offer, the Supreme Court noted that a defendant remains free to prove, through competent evidence, *actual* vindictiveness, namely, that additional charges were bought solely to penalize the defendant for his exercise of a procedural right and could not be justified as a proper exercise of prosecutorial discretion. *Id.* at 380 n. 12, 384, 102 S.Ct. at 2492 n. 12, 2494.

Here, Petitioner has not proffered *any* evidence showing or tending to show that the prosecutor's amendment of the Information to include an additional "strike" allegation resulted from actual vindictiveness. As discussed throughout this Report and Recommendation, that second "strike" allegation was supported by the evidence, and as in *Bordenkircher,* it was a charge "on which [Petitioner] was plainly subject to prosecution." 434 U.S. at 365, 98 S.Ct. at 669. As in *Goodwin,* the prosecutor was entitled to file the additional charge when the expectation that Petition-

55. The Supreme Court explicitly distinguished situations in which additional charges are filed after a defendant rejects a plea bargain from situations in which a defendant is convicted, appeals, obtained a reversal of his conviction, and then faces more serious charges on remand. In the latter situation, "the Court was dealing with the State's uni-

lateral imposition of a penalty upon a defendant who had chosen to exercise a legal right to attack his original conviction—a situation 'very different from the give-and-take negotiation common in plea bargaining between the prosecution and the defense.' " *Bordenkircher,* 434 U.S. at 362, 98 S.Ct. at 667 (citation omitted).

er might plead guilty to a lesser charge was not met, due to Petitioner's rejection of the prosecutor's plea offer. 457 U.S. at 380, 102 S.Ct. at 2492. Indeed, *Goodwin* makes clear that the "sequence of events" in issue here—plea offer rejection and demand for trial followed by amendment of the charging document to allege more serious charges—does not give rise to any inference of vindictiveness. *Id.* at 370, 382–85, 102 S.Ct. at 2487, 2493–94. Moreover, during the jury trial itself, the prosecution continued to offer plea deals and, during sentencing, acquiesced to the trial court's stated intent to reduce the petty theft with a prior count to a misdemeanor to avoid an otherwise-required imposition of a second Three Strikes sentence, as well as to the trial court's stated intent to strike the seven one-year prior prison term enhancements that had been found "true." There are no circumstances suggesting prosecutorial vindictiveness in this case.

Petitioner's fifteenth claim relies solely on the fact that he faced, and ultimately received, an additional sentence enhancement after he rejected the prosecutor's plea offer. Both *Bordenkircher* and *Goodwin* doom such a claim. Accordingly, as no actual prosecutorial vindictiveness has been shown, this Ground Fifteen subclaim must be denied.

## V. *Petitioner's Claims Of Judicial Error, Bias, And Misconduct Do Not Warrant Federal Habeas Relief.*

Grounds Twenty–One and Thirty rest on allegations of judicial error, bias, and/or misconduct at trial and on post-conviction review. (Petition Att. at 9, 12.)

### A. *The Trial Court's Jurisdiction And Alleged Communication With The State Appellate Court On Post–Conviction Review*

In Ground Twenty–One, Petitioner contends that the judge at his jury trial acted in excess of his jurisdiction by ruling on several of Petitioner's post-conviction applications and engaging in an unauthorized ex parte communication with the state appellate court.

Petitioner was convicted on September 1, 2000, and sentenced on May 21, 2001. (*See, e.g.,* CT 164–66, 315.) The record shows that, on May 24, 2001, Petitioner mailed copies of a petition for a writ of mandate/prohibition, the caption of which referenced the California Court of Appeal for the Second Appellate District, to both the trial court and the California Court of Appeal (hereafter, "Mandamus Petition"). (CT 304A–304N; Lodg. Nos. 10, 16.) The Mandamus Petition alleged errors by the trial court (Los Angeles Superior Court Judge Norm Shapiro) and the prosecutor and asked that Petitioner's sentence be stayed, his conviction on Count 3 be vacated, and he be granted a new trial. (*Id.*) The Los Angeles Superior Court filed the Mandamus Petition on May 31, 2001, and the California Court of Appeal filed the Mandamus Petition (Case No. B150460) on June 1, 2001. (*Id.*) On May 31, 2001, Judge Shapiro issued a brief minute order, which stated that the Mandamus Petition had been read and considered and was denied. (CT 305; Lodg. No. 11.) On June 7, 2001, the California Court of Appeal issued an order that denied the Mandamus Petition on the ground that "Petitioner has an adequate remedy by way of appeal from the final judgment of conviction." (Lodg. No. 17.)

Petitioner complains about the trial court's May 31, 2001 ruling, arguing that Judge Shapiro should not have addressed the Mandamus Petition, because: its caption indicated the document was to be considered by the California Court of Appeal; and the Mandamus Petition challenged certain of Judge Shapiro's rulings. He asserts that, as a result, the trial court

was without jurisdiction to rule on the Mandamus Petition, as well as other, un-identified trial court habeas petitions.

 Petitioner's challenge to the trial court's jurisdiction to rule on any post-conviction application by Petitioner presents a claim of alleged state law error that is not cognizable on federal habeas review. *See Estelle,* 502 U.S. at 67–68, 112 S.Ct. at 480. The only question at issue in this proceeding is whether Petitioner's *conviction* and/or *sentence* violated federal law. *Id.* "[A] petition alleging errors in the state post conviction review process is not addressable through habeas corpus proceedings." *Franzen v. Brinkman,* 877 F.2d 26, 26 (9th Cir.1989); *see also Ortiz v. Stewart,* 149 F.3d 923, 939 (9th Cir.1998) ("federal habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings"); *Gerlaugh v. Stewart,* 129 F.3d 1027, 1045 (9th Cir.1997) (errors committed in a state post-conviction proceedings are not cognizable in federal habeas proceedings); *Villafuerte v. Stewart,* 111 F.3d 616, 632 n. 7 (9th Cir. 1997) (holding that the petitioner's claim that he was denied due process in his state habeas proceedings was "not addressable in a section 2254 proceeding"). In short, even if the trial court erred in filing and ruling on the Mandamus Petition, any such error cannot be considered under Section 2254. Thus, Petitioner's complaints about the trial court's purported lack of jurisdiction to rule on the Mandamus Petition and other post-conviction habeas filings are not cognizable on federal habeas review.

Petitioner does not allege any fact to support his allegation that the trial court engaged in an impermissible *ex parte* communication with the California Court of Appeal. Construed very liberally, Petitioner's allegation appears to rest, at best, on the fact that another Los Angeles Superior Court judge was temporarily sitting by designation on the state appellate court,

including on the panel that denied the Mandamus Petition. (*See* Lodg. No. 22 at 1–3.) Petitioner's contention that this fact establishes that Judge Shapiro communicated with one or more California Court of Appeal Justices is pure speculation, and because it is devoid of any factual support, must be rejected on that basis. *See, e. g., James v. Borg,* 24 F.3d at 26 ("[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief").

Accordingly, Ground Twenty–One must be denied.

B. *Alleged Judicial Misconduct At Trial*

In Ground Thirty, Petitioner contends that the trial judge committed misconduct by: (1) "impeach[ing]" the jury's verdict through the imposition of a six-month (and concurrent) term on the petty theft with a prior conviction (Count 2); (2) being vindictive at the time of sentencing, because Petitioner had succeeded in "getting judge trial order, set aside, and ... Petitioner would not plea" but, instead, exercised his jury trial rights; and (3) sentencing Petitioner based on his Count 3 conviction, because the underlying crime had not been presented to the jury. (Petition Att. at 12; *see* Trav. at 126–28.)

 Due process requires a "fair trial in a fair tribunal" *Bracy v. Gramley,* 520 U.S. 899, 904–05, 117 S.Ct. 1793, 1797, 138 L.Ed.2d 97 (1997) (citing, *inter alia, Withrow v. Larkin,* 421 U.S. 35, 46, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975)), before a judge with no actual bias against the defendant, or interest in the outcome of his particular case. *See Aetna Life Ins. Co. v. Lavoie,* 475 U.S. 813, 821–22, 106 S.Ct. 1580, 1585, 89 L.Ed.2d 823 (1986); *Tumey v. Ohio,* 273 U.S. 510, 523, 47 S.Ct. 437, 441, 71 L.Ed. 749 (1927). To succeed on a judicial bias or misconduct claim, a

petitioner must "overcome a presumption of honesty and integrity in those serving as adjudicators." *Withrow,* 421 U.S. at 47, 95 S.Ct. at 1464.

 Bias or misconduct can "almost never" be demonstrated solely on the basis of a judicial ruling alone. *Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 1157, 127 L.Ed.2d 474 (1994).

> Almost invariably, [judicial rulings] are proper grounds for appeal, not for recusal. [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deepseated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge ... [unless] they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. ... A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune.

*Id.* at 555–56, 114 S.Ct. at 1157 (citations omitted).

 Under these standards, Petitioner fails to establish that the trial judge was biased against him or that, as a result of the judge's rulings and administration of the case, Petitioner did not receive "a 'fair trial in a fair tribunal.'" *Bracy,* 520 U.S. at 904–05, 117 S.Ct. at 1797. Petitioner's second and third contentions—that the trial court acted vindictively in sentencing Petitioner because he rejected a plea offer, and that the trial judge was not entitled to sentence Petitioner based on the lesser included offense found under California Health & Safety Code § 11350(a)—already

have been addressed in connection with the Court's earlier discussions of Grounds Nine and Eighteen, and these claims have been found to be factually and legally baseless. But even if error had been shown, this could not support relief under Ground Thirty, because Petitioner's assertions that the trial court committed legal error are insufficient to establish judicial bias or misconduct. *See Liteky,* 510 U.S. at 555–56, 114 S.Ct. at 1157. "[J]udicial rulings, routine trial administration efforts, and ordinary admonishments (whether or not legally supportable) to counsel and to witnesses" do not evidence judicial bias "that would render fair judgment impossible." *Id.* at 556, 114 S.Ct. at 1157. Petitioner's allegations do not identify conduct by the trial judge that went beyond the normal administration of the case.

 With respect to Petitioner's assertion that the trial judge "impeached" the jury's guilty verdict on Count Two (the petty theft with a prior count) by imposing sentence on that conviction, Petitioner's complaint is perplexing. Based on the arguments set forth in his Traverse, it appears Petitioner contends that, because the robbery (Count 1) and petty theft (Count 2) charges purportedly stemmed from the same factual circumstances, California Penal Code § 654 barred the prosecutor from bringing and pursuing both charges at trial. Therefore, Petitioner reasons that, because prosecution of both Counts was barred, the trial court was barred from sentencing Petitioner on Count 2, notwithstanding the jury's guilty verdict, because the charge itself was barred by Section 654.

 Petitioner's assertions are entirely without merit. Section 654 did not bar the prosecutor from pursuing multiple charges arising out of the same or related acts within one state criminal proceeding; rather, the statute bars the impo-

sition of multiple punishments for the same act.[56] Petitioner was acquitted of the Count 1 robbery charge, and thus, he did not face multiple punishment for the "same act" if sentence was imposed based on Count 2. Hence, even if (and the Court renders no opinion on this question) the trial court might have faced a Section 654 issue had the jury found Petitioner guilty of both Counts 1 and 2 and the trial court had been called upon to sentence Petitioner on both charges, this event never came to pass.

 To the extent Petitioner contends that Section 654(a) establishes a double jeopardy protection against his Count 2 conviction and sentence, due to his acquittal on the Count 1 robbery charge, he is mistaken. (*See* Note 56, *supra.*) Double jeopardy protections have no application when verdicts of acquittal and guilt arise in *one* prosecution involving multiple charges. *See, e.g., People v. Garcia,* 166 Cal.App.3d 1056, 1067–68, 212 Cal.Rptr. 822, 828 (1985) ("The double jeopardy rule acts as a bar to subsequent prosecution i.e., the filing and pressing of a new action. . . . The rule has no application where there is one prosecution involving multiple offenses. [T]he rule reflects the defendant's right to have trial completed by a particular tribunal.") (citations omitted); *see also Arizona v. Washington,* 434 U.S.

497, 503, 98 S.Ct. 824, 829, 54 L.Ed.2d 717 (1978) ("The constitutional protection against double jeopardy unequivocally prohibits a second trial following acquittal."); *Brown v. Ohio,* 432 U.S. 161, 165–66, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977) ("The Double Jeopardy Clause 'protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense' "; and "[t]hat policy protects the accused from attempts to relitigate the facts underlying a prior acquittal . . . and from attempts to secure additional punishment after a prior conviction and sentence.") (citations omitted).

The allegations of Ground Thirty do not establish judicial bias or misconduct by the trial judge at Petitioner's jury trial. Accordingly, the Court should deny Ground Thirty in its entirety.

## RECOMMENDATION

For the foregoing reasons, IT IS RECOMMENDED that the District Judge issue an Order: (1) accepting and adopting this Report and Recommendation; (2) denying the Petition; and (3) directing that

**56.** Section 654(a) provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."

Of course, the Double Jeopardy Clause does not prohibit a state from charging a defendant with separate offenses and prosecuting them in a single trial. Moreover, the Double Jeopardy Clause does not prohibit a state from charging and prosecuting a defendant

for greater and lesser included offenses in a single trial. *Ohio v. Johnson,* 467 U.S. 493, 500, 104 S.Ct. 2536, 2541, 81 L.Ed.2d 425 (1984); *see also Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) ("[a] single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other" under the Double Jeopardy Clause); *Texas v. Cobb,* 532 U.S. 162, 172–73, 121 S.Ct. 1335, 1343, 149 L.Ed.2d 321 (2001) (same; citing *id.*); *United States v. Jose,* 425 F.3d 1237, 1241 n. 2 (9th Cir.2005).

Judgment be entered dismissing this action with prejudice.

DATED: September 25, 2009.